BIEMANN AND ROWELL COMPANY v. THE DONOHOE COMPANIES, INC.,
D/B/A DONOHOE CONSTRUCTION COMPANY

No. COA00-1177

(Filed 20 November 2001)

**1. Construction Claims— delays—allocation of responsibility by architect—action between contractors**

The trial court did not err when sitting without a jury on a construction claim between the heating contractor (plaintiff) and the general contractor (defendant) by holding that the architect's failure to assign any direct liability for delay to defendant served as an implicit determination that defendant was not directly responsible to plaintiff for delays in plaintiff's performance. Article 15 of the general conditions of the project vested authority in the architect to determine responsibility for delay among the prime contractors, and plaintiff did not meet its burden of establishing that the architect's failure to allocate liability to defendant was dishonest or a mistake.

**2. Construction Claims— delays—action between contractors—causation required**

An injured contractor may not recover delay damages by merely demonstrating that such damages were within the contemplation of the parties at the time the contract was entered. Although there was evidence here that defendant may have contributed to the overall project delay, plaintiff failed to show how delays specifically caused by defendant impacted plaintiff's work performance.

**3. Damages— construction claim—measurement—total cost method—failure to show practicability**

A prime contractor in a construction action against another prime contractor failed to prove that it sustained damages that can be ascertained and measured with reasonable certainty where plaintiff failed to establish practicability, the first of four criteria for the total cost method of determining losses, and failed to properly establish responsibility for its additional costs, since it did not isolate the nature and extent of specific delays and connect them to an act or omission by defendant.

**4. Construction Claims— action between contractors— delays—notice**

     The trial court, sitting without a jury on a construction claim between prime contractors, did not err by finding that plaintiff failed to provide defendant with timely notice of its claims. It was necessary for the architect, the arbiter of disputes between the prime contractors, to be notified when one contractor caused delay to another. Discussions at weekly foremen's meetings and monthly progress meetings with the architect and owner did not constitute sufficient notice. Plaintiff never gave written or verbal notice of potential claims at these meetings and never gave notice that it was suffering potential harm; moreover, plaintiff accepted final payment, which constituted a waiver of all claims.

     Appeal by plaintiff from judgment entered 5 June 2000 by Judge Ben F. Tennille in Guilford County Superior Court. Heard in the Court of Appeals 20 August 2001.

     *Erwin and Bernhardt, P.A., by Fenton T. Erwin, Jr., for plaintiff-appellant.*

     *Safran Law Offices, by Perry R. Safran, for defendant-appellee.*

THOMAS, Judge.

     This breach of contract case between prime contractors is based on a claim of delay in the construction of the University of North Carolina Neuropsychiatric Hospital on the Chapel Hill campus. Plaintiff, Biemann and Rowell Company, was the heating and ventilating contractor, while defendant, The Donohoe Companies, Inc., D/B/A Donohoe Construction Company, was the general contractor.

     In a bench trial, the trial court entered judgment in favor of defendant on all of plaintiff's claims. Plaintiff appeals, advancing the following four arguments: (1) the trial court erred in its determination of the architect's role in apportioning liability among the prime contractors; (2) it is not necessary to prove that defendant proximately caused injury to plaintiff; (3) the evidence establishes that plaintiff incurred damages for which defendant is liable; and (4) defendant's actual knowledge of potential claims against it was sufficient notice. For the reasons herein, we affirm the decision of the trial court.

BIEMANN & ROWELL CO. v. DONOHOE COS.

[147 N.C. App. 239 (2001)]

On or about 1 July 1992, plaintiff and defendant entered into separate contracts with the State of North Carolina, through the University of North Carolina at Chapel Hill (owner), to build the multi-million dollar Neuropsychiatric Hospital. The parties operated under a multiple-prime contract pursuant to N.C. Gen. Stat. § 143-128, which requires that separate contracts be awarded for the major branches of work when a public building project's expected costs exceed $500,000. N.C. Gen. Stat. § 143-128 (1999). Each separate contractor is directly liable to the State of North Carolina and to the other contractors. N.C. Gen. Stat. § 143-128(b) (1999). Accordingly, a prime contractor may be sued by another prime contractor for economic loss resulting from the first prime contractor's failure to fully perform its duties under the terms of the separate contracts. *See Bolton v. T.A. Loving Co.*, 94 N.C. App. 392, 397, 380 S.E.2d 796, 800, *disc. review denied* 325 N.C. 545, 385 S.E.2d 496 (1989).

As the general contractor, defendant was assigned the role of project expediter. While the owner hired a schedule coordinator to develop the progress schedule of the contractors, under Article 14(j) of the general conditions of the separate contracts defendant remained responsible for "maintain[ing] the progress schedule, making monthly adjustments, updates, corrections, etc., that are necessary, keeping all Contractors and the [architect] fully informed."

The original critical path method progress schedule provided for completion of the project within 1004 days. Delays, ultimately totaling 369 days, occurred throughout the project. They were at least partially attributable to poor weather, logistical problems due to the number of contractors working within the limited area of the site, a structural defect which caused the building to settle, and revisions made by the owner to the sixth floor plans during the course of the project. As a result, the contractors were frequently forced to complete work out of the anticipated sequence.

To accelerate completion of the project, it was the understanding of the contractors, architect, and schedule coordinator that defendant would "dry-in" the building by installing a moisture seal at the fifth floor level. Normally, work is restricted until the roof is built because lower levels would otherwise be exposed to moisture accumulation in inclement weather. This temporary building seal was intended to allow work to take place at the lower levels before the roof was installed. None of those involved who testified had previously seen a building seal, however, or knew of an agreement among

the parties as to what specifically would be done to create one. Defendant never installed the building seal.

Letters and summaries written by HKS Architects (architect) indicate that defendant was failing to complete work according to the project schedule and to fulfill its duties as project expediter. Neither the architect nor the owner, however, ever assigned any direct liability for delay to defendant. Meeting minutes and observation reports, which list delays of plaintiff's activities, indicate that plaintiff also contributed to overall project delay. Substantial completion of the project occurred on 15 May 1996, and the owner took beneficial occupancy on that date.

Plaintiff maintains that defendant's failure to install the building seal, as well as defendant's failure to supervise and properly schedule its subcontractors, caused delays to plaintiff's work and as a consequence plaintiff suffered economic loss. Plaintiff did not notify defendant of its claims against them until October of 1996. By that time, plaintiff had released 78 of its 80 subcontractors.

Initially, we note that a trial court's findings of fact in a bench trial have the force of a jury verdict and are conclusive on appeal if there is competent evidence to support them, even though there may be evidence that would support findings to the contrary. *State v. Coronel*, 145 N.C. App. 237, 250, 550 S.E.2d 561, 510 (2001). However, conclusions of law reached by the trial court are reviewable de novo. *Mann Contractors v. Flair with Goldsmith Consultants—II, Inc.*, 135 N.C. App. 772, 775, 522 S.E.2d 118, 121 (1999).

I.

[1] Plaintiff first assigns as error the trial court's determination of the architect's role in apportioning liability for delays among prime contractors. The trial court held that the architect's failure to allocate liability to defendant for delays in the performance of plaintiff's work constituted an implicit determination that defendant was not directly responsible. Plaintiff contends that, under the prime contractors' separate contracts, the architect is not authorized to decide disputes among the prime contractors. Rather, plaintiff argues, it is only the court that is authorized to determine the proper allocation of delay damages among the prime contractors. We disagree.

Multiple prime contractors co-exist in a delicate state of symbiosis, in which the quality of a contractor's work often depends on the quality of the work of another contractor, and the delay of one con-

tractor results in the delay of other contractors' work. *See Bolton,* 94 N.C. App. 392, 402, 380 S.E.2d 796, 803. This Court in *Bolton* held that, under the contract in that case, the architect determined responsibility for delay among the prime contractors. *Id.* When an architect is vested with the authority to render judgment on a contractor's performance, the determination is prima facie correct, and the other parties have the burden of proving fraud or mistake. *Id.* (quoting *Barnes Constr. Co. v. Washington Township,* 134 Ind. App. 461, 466, 184 N.E.2d 763, 764-65 (1962)).

The contract provisions here are similar to those in *Bolton.* Article 15(c) of the general conditions of the project contract provides that when one prime contractor's work depends on the work of another prime contractor, "defects which may affect that work shall be reported to the Designer [architect] in order that prompt inspection may be made and the defects corrected." Article 15(c) goes on to provide that the architect "shall be the judge as to the quality of work and shall settle all disputes on the matter between the Contractors." Article 15, therefore, vests authority in the architect to determine responsibility for delay among the prime contractors. Furthermore, Article 23(c) defines the project architect as:

> the judge as to the division of responsibility between the Contractor(s). . . and shall apportion the amount of liquidated damages to be paid by each of them, according to delay caused by any or all of them.

It is plain under Article 23(c) that the architect determines each prime contractor's liability to the owner for delay. While Article 23 does not give the architect authority to decide delay disputes among the prime contractors, the architect's decision under this article would be relevant to a contractor's claim.

Based on *Bolton* and the foregoing contract provisions, we hold that the contractors in the present case vested authority in the architect to decide disputes between the contractors. The trial court correctly found that "the Architect's failure to assign any direct liability for delay to Donohoe served as an implicit determination that Donohoe was not directly responsible to Biemann for delays in Biemann's performance of its work." Plaintiff did not meet its burden of establishing that the architect's failure to allocate liability to defendant was dishonest or a mistake and we reject this assignment of error.

II.

[2] Plaintiff argues by the second assignment of error that it is not necessary to prove that defendant proximately caused injury to plaintiff. The contention is that under *Bolton*, an injured contractor may recover delay damages by merely demonstrating that such damages were within the contemplation of the parties at the time the contract was entered. We disagree.

A prime contractor has a duty to the other prime contractors for the full performance of all duties and obligations due under the terms of the separate contracts and in accordance with the plans and specifications. N.C. Gen. Stat. § 143-128. *Bolton* did not dispense with the causation element necessary to maintain this statutory cause of action for breach of contractual duties. *See Bolton*, 94 N.C. App. at 406-07, 380 S.E.2d 805-06. Rather, this Court in *Bolton* held that in order to recover *special* damages, the plaintiff must not only prove the elements of a breach of contract claim, but also that the requested damages were contemplated at the time of contracting. *Id.* Plaintiff's reliance on *Bolton* is mistaken. To recover damages, plaintiff must show that the contract was breached by defendant and that the breach caused plaintiff's damages.

Although there is evidence here that defendant may have contributed to overall project delay, plaintiff failed to show how delays specifically caused by defendant impacted plaintiff's work performance. Central to plaintiff's argument is defendant's failure to install the temporary building seal. The installation of the temporary seal, however, first appeared as an activity on the critical path in April of 1994, long after the project began experiencing delays. Plaintiff, moreover, merely presented a chart of instances of delay allegedly attributable to plaintiff, and relied on anecdotal testimony about the delays. Finally, plaintiff failed to take into account delays attributable to other causes. We accordingly dismiss plaintiff's second assignment of error.

III.

[3] Plaintiff next assigns as error the trial court's holding that plaintiff failed to prove that it sustained damages for which defendant was liable. A plaintiff has an obligation to prove such facts as will furnish a basis for the calculation of damages. *See Esteel Co. v. Goodman*, 82 N.C. App. 692, 698, 348 S.E.2d 153, 157 (1986), *disc. review denied* 318 N.C. 693, 351 S.E.2d 745 (1987). For the breach of an executory

contract, a plaintiff may recover only such damages as can be ascertained and measured with reasonable certainty. *See Tillis v. Calvine Cotton Mills, Inc.*, 251 N.C. 359, 366, 111 S.E.2d 606, 612 (1959). Moreover, where both parties contribute to the delay, neither can recover damages, unless there is proof of clear apportionment of the delay and expense attributable to each party. *See Blinderman Constr. Co. v. United States*, 695 F.2d. 552, 559 (Fed. Cir. 1982) (quoting *Coath & Goss, Inc. v. United States*, 101 Ct. Cl. 702, 714-15 (1944)).

Rather than using a direct or actual cost method of quantifying actual losses incurred resulting from defendant's actions, plaintiff relied on the modified total cost method, a variation of the total cost method, to prove delay damages. Under the total cost method, a contractor seeks the difference between its total costs incurred in performance of the contract and its bid price. *See Youngdale & Sons Const. Co., Inc. v. United States*, 27 Fed. Cl. 516, 541 (1993). This method is condoned only where no other way to compute damages is feasible, "because it blandly *assumes*—that every penny [sic] of the plaintiff's costs are *prima facie* reasonable, that the bid was accurately and reasonably computed, and that the plaintiff is not responsible for any increases in cost." *Id.* (citing *Urban Plumbing & Heating Co. v. United States*, 408 F.2d. 382, 394 (Ct. Cl. 1969), *cert. denied* 398 U.S. 958, 26 L.Ed. 2d 542 (1970)); *F.H. McGraw & Co. v. United States*, 130 F. Supp. 394, 400 (Ct. Cl. 1955).

Plaintiff must satisfy the conjunctive four-part test for recovery under the total cost method: (i) the impracticability of proving actual losses directly; (ii) the reasonableness of its bid; (iii) the reasonableness of its actual costs; and (iv) the lack of responsibility for the added costs. *Id.* (citing *Servidone Constr. Corp. v. United States*, 931 F.2d 860, 861 (Fed. Cir. 1991)); *Boyajian v. United States*, 423 F.2d 1231, 1243 (Ct. Cl. 1970). The modified total cost method is the total cost method with adjustments for any deficiencies in plaintiff's proof in satisfying the four requirements. The modified approach assumes the elements of a total cost claim have been established, but permits the court to modify the test so that the amount plaintiff would have received under the total cost method is only the starting point from which the court will adjust the amount downward to reflect the plaintiff's inability to satisfy the test. *Youngdale*, 27 Fed. Cl. at 541 (citing *Servidone*, 931 F.2d at 862).

The trial court determined that plaintiff failed to establish impracticability, the first of the four criteria for using the total cost

method in determining losses. Plaintiff kept a daily log book of labor overrun throughout the project but made no attempt to tie the extra labor costs to any specific delay. In addition, plaintiff failed to establish that its bid was reasonable. Plaintiff's employees testified that the bid was "aggressive," and plaintiff produced no other bids for the heating and ventilation work for comparison. Plaintiff also failed to properly establish responsibility for its additional costs, since it did not isolate the nature and extent of specific delays and connect them to an act or omission by defendant. Instead, plaintiff allocated only a narrow set of costs to itself, and then attributed the remainder of the cost overrun entirely to defendant. Plaintiff failed to prove that it sustained damages that can be ascertained and measured with reasonable certainty and consequently we reject this assignment of error.

IV.

[4] Plaintiff lastly assigns as error the trial court's decision that plaintiff's action is barred because plaintiff failed to give timely notice to defendant of its claims. Specifically, plaintiff contends that the trial court erred in finding an express contractual obligation to provide notice of a delay to the architect, and that defendant's actual knowledge of its potential liability to co-prime contractors was sufficient notice. We disagree.

As arbiter of disputes between the prime contractors, it is necessary for the architect to be notified when one contractor causes delay to another. Article 23(d) and (e) under the general conditions of the project contract provides that a contractor who is delayed by another contractor is to request an extension of time in writing to the architect and owner within twenty days following the cause of the delay. We hold that plaintiff had a contractual duty to provide notice of delay caused by defendant.

We also reject plaintiff's contention that discussions at weekly foreman's meetings and monthly progress meetings with the architect and owner constitute sufficient notice. While these meetings may have provided constructive notice, plaintiff never gave written or verbal notice of potential claims at these meetings, nor did plaintiff ever give notice that it was suffering economic harm. In addition, without ever having given notice of its claims, plaintiff accepted final payment in May of 1996. According to Article 32(c), "[t]he making and acceptance of final payment shall constitute a waiver of all claims by the Contractor."

Failure to provide proper notice, moreover, was a breach of plaintiff's duty to mitigate damages, and prejudiced defendant by not providing an opportunity to cure. "[I]t is a sound principle of law that one who is injured in his person or property by the wrongful or negligent act of another is required to protect himself from loss, if he can do so with reasonable exertion or at trifling expense; and ordinarily, he will be allowed to recover from the delinquent party only such damages as he could not, with reasonable effort, have avoided." *Durham Constr. Co. v. Wright*, 189 N.C. 456, 459, 127 S.E. 580, 582 (1925). We uphold the trial court's decision that plaintiff failed to provide defendant with timely notice of its claims.

Accordingly, the decision of the trial court is affirmed.

AFFIRMED.

Chief Judge EAGLES and Judge TIMMONS-GOODSON concur.