LINCOLN TERRACE ASSOCIATES, LTD., PLAINTIFF v. SHARANZA KELLY & ALL OCCUPANTS, DEFENDANT

No. COA05-1563

(Filed 3 October 2006)

**Landlord and Tenant— summary ejectment—lease notice provisions not met**

Lease forfeitures are not looked upon with favor by the courts. Summary ejectment should not have been granted here where the plaintiff did not show that the termination notice strictly complied with the terms of the lease for a federally subsidized apartment.

Appeal by defendant from judgment entered 19 April 2005 by Judge Thomas G. Taylor in Gaston County District Court. Heard in the Court of Appeals 21 August 2006.

*No brief for plaintiff-appellee.*

*Robinson, Bradshaw & Hinson, P.A., by Julian H. Wright, Jr.; Legal Aid of North Carolina, Inc., by Sharon S. Dove, for defendant-appellants.*

HUNTER, Judge.

Sharanza Kelly ("appellant") appeals on behalf of herself and her family from a judgment entered 19 April 2005. For the reasons stated herein, we reverse this order.

The trial court made findings that appellant, her husband, Franklin Kelly ("Franklin"), and their two children entered into a lease for an apartment at Lincoln Terrace Apartments on 21 October

LINCOLN TERRACE ASSOCS., LTD. v. KELLY

[179 N.C. App. 621 (2006)]

2003. The apartment rent was subsidized by the United States Department of Housing and Urban Development ("HUD"), requiring compliance with applicable federal rules and regulations related to the program.

In October of 2004, Franklin damaged the unit in which appellant and Franklin lived by kicking in the door. The door was repaired shortly thereafter by appellee. No charges were billed to appellant and Franklin at the time the repair was completed.

On 21 December 2004, a verbal altercation occurred in the common area of the Lincoln Terrace Apartments between Franklin and other tenants. The manager of the Lincoln Terrace Apartments, Barbara White ("White"), summoned police. The police directed residents and guests to return to their residences. Approximately twenty minutes later, after the police had left, White testified she saw a fist fight between Franklin and another resident, Adam Randolph, in the parking lot. White testified that she saw both men swinging at one another, but did not see how the altercation began. The trial court found that on 27 December 2004, appellant was served with a HUD Notice of Infraction regarding the fight on 21 December 2004, and that on 28 December 2004, appellant was served with a Notice of Termination.

On 28 January 2005, appellee filed a complaint in summary ejectment against appellant and the occupants of her apartment, alleging as lease infractions that members of the household had disturbed and harrased other tenants, had assaulted other tenants, and had damaged property by kicking in the front door.

A trial was conducted before the magistrate on 22 February 2005 and judgment was awarded to appellee. Appellant appealed to district court and both parties waived their right to a jury trial. The trial court awarded judgment in appellee's favor and damages of $144.58 and the cost of the appeal. Appellant appeals.

I.

Appellant contends the trial court erred in awarding appellee judgment when appellee failed to show that appellant was properly served with a termination notice which strictly complied with the lease agreement. As we find no evidence to support the trial court's finding after careful review of the record, we agree.

"[A] trial court's findings of fact in a bench trial have the force of a jury verdict and are conclusive on appeal if there is competent evidence to support them, even though there may be evidence that would support findings to the contrary." *Biemann & Rowell Co. v. Donohoe Cos.*, 147 N.C. App. 239, 242, 556 S.E.2d 1, 4 (2001). "However, conclusions of law reached by the trial court are reviewable de novo." *Id.*

In order to evict a tenant in North Carolina, a landlord must prove: (1) That it distinctly reserved in the lease a right to declare a forfeiture for the alleged act or event; (2) that there is clear proof of the happening of an act or event for which the landlord reserved the right to declare a forfeiture; (3) that the landlord promptly exercised its right to declare a forfeiture, and (4) that the result of enforcing the forfeiture is not unconscionable.

*Charlotte Housing Authority v. Fleming*, 123 N.C. App. 511, 513, 473 S.E.2d 373, 375 (1996). "Our courts do not look with favor on lease forfeitures." *Stanley v. Harvey*, 90 N.C. App. 535, 539, 369 S.E.2d 382, 385 (1988). "When termination of a lease depends upon notice, the notice must be given in strict compliance with the contract as to both time and contents." *Id.* (holding that when notice to vacate was insufficient to comply with the terms of the lease, lease was not properly terminated before commencement of summary ejectment action).

Here, the relevant portion of the governing lease, Paragraph 23, Termination of Tenancy, states that:

e. If the Landlord proposes to terminate this Agreement, the Landlord agrees to give the Tenant written notice and the grounds for the proposed termination. . . . Notices of proposed termination for other reasons must be given in accordance with any time frames set forth in State and local law. Any HUD-required notice period may run concurrently with any notice period required by State or local law. All termination notices must:

• specify the date this Agreement will be terminated;

• state the grounds for termination with enough detail for the tenant to prepare a defense;

• advise the Tenant that he/she has 10 days within which to discuss the proposed termination of tenancy with the Landlord. The 10-day period will begin on the earlier of the date the

notice was hand-delivered to the unit or the day after the date the notice is mailed. If the Tenant requests the meeting, the Landlord agrees to discuss the proposed termination with the Tenant; and

- advise the Tenant of his/her right to defend the action in court.

f. If an eviction is initiated, the Landlord agrees to rely only upon those grounds cited in the termination notice required by paragraph e.

A review of the record shows that no Notice of Termination was entered into evidence. In closing arguments during the bench trial, appellee's counsel stated:

My client testified on the notice of termination, in fact, she testified on cross, [appellant] asked her, and she testified that she had served them with notice of termination because it's a four or five-page document, the last page of which had the bill for the damages.

In [appellant]'s closing she stated and she was arguing about the waiver on the door, she said on December 28th after the notice of termination had been served on the 27th. So, it's very clear that notice of termination was served. My client testified to it. We did not introduce it, but we did in fact testify to it which is sufficient.

A review of the trial transcript reveals that the sole evidence presented to the trial court regarding the Notice of Termination was in the form of testimony by White. On direct examination, White did not testify regarding a notice on termination or eviction. On cross-examination, White testified that she sent out a Notice of Termination to appellant on 27 December 2004. White stated that the Notice of Termination did not include the damage to the door, but did include the incident on 21 December 2004. When asked if she was reading the Notice of Termination, White responded that she was. The following exchange then occurred:

BY THE COURT:

We have it as an exhibit if you would like [to] show it to her so that—

BY [APPELLANT]:

That would be good.

BY THE COURT:

I believe it's exhibit number—

BY [APPELLEE]:

The notice of infraction?

BY THE COURT:

Two, notice of infraction, is that what you're talking about?

BY [APPELLANT]:

That was not what I was talking about.

BY THE COURT:

Oh, okay. All right. Then if you have something you want to show her so that we're on the same page.

BY [APPELLANT]:

Q Ms. White, if you could look through your materials and find the notice of termination or, no, I guess it's called notice of eviction.

A Are you talking about the notice that advises them the tenancy will be terminated?

Q That's correct.

A I have it in my hand, ma'am.

Q If I can take a look at it. May I approach, your Honor?

BY THE COURT:

Yes.

BY [APPELLANT]:

Ms. White, I think, if you could take a look at that, that notice that you've got in front of you, that December 27th, '04 notice. That does not say anything about a door, does it?

A No, it does not.

Q Doesn't say anything about damages to a door·either, does it?

A No, it does not.

LINCOLN TERRACE ASSOCS., LTD. v. KELLY

[179 N.C. App. 621 (2006)]

Q  Okay. And you sent out a notice of eviction on the same date, on December 27th, '04, correct? Titled "Eviction Notice" at the top.

A  Are you talking about the company eviction notice?

Q  I believe it's the company eviction notice.

A  Yes, ma'am.

Q  Okay. And that eviction notice does not say anything about the door, correct?

A  No, it does not.

No further questions were asked regarding the Notice of Termination or eviction on cross-examination. On re-direct, appellee questioned White regarding the Notice of Termination as follows:

Q  [Appellant] asked you about the notice of termination that you sent?

A  Yes.

Q  Eviction notice and she also asked you about the notice of termination. Do you remember that?

A  Yes, I do.

Q  Now, you have your copies with you?

A  Yes, I do.

Q  Looking at the last page of the December 27th documents, it's about the date December 28th, 2004. Do you see them? Let me approach and show you what I'm—and we can move along more quickly. I'm showing you—just refresh your memory and state what that document is.

A  Okay. I know what that is.

Q  Okay. Did Ms. Kelly get a copy—sign saying that she had gotten a copy of the eviction letter on 12/27 for five pages of the thirty-day notice?

A  Yes.

Q  Did she also sign challenging the four infractions, four, five, six and seven?

A  Yes, she did.

Q Did she also sign acknowledging the charges, the account charges, for the damages?

A Yes, she did.

No further questions regarding the Notice of Termination or eviction were asked by either party. Based on White's testimony, the trial court made findings that:

18. On December 28, 2004 the plaintiff served the defendants with a HUD Notice of Termination.

19. The defendants signed a form acknowledging receipt of the Notice of Termination which included the reasons for the termination, the fight, and the damages for the door cited below.

. . .

36. The plaintiff complied with all State and HUD requirements pertaining to notice, termination and procedure in filing the action in summary ejectment.

As set out *supra*, White testified that the Notice of Termination was sent out on 27 December 2004 and that appellant signed for the notice. White further stated the Notice of Termination mentioned the fighting incident on 21 December 2004, but did not include as one of the grounds for termination the damages to the door. White did not testify as to any further contents of the Notice of Termination.

No further evidence was offered as to the Notice of Termination. The only document submitted into evidence dated 27 December 2004 was the Notice of Infraction, which did not fully comply with the lease requirements for termination of the lease agreement. No evidence was offered to show that Notice of Termination specified the date the agreement would be terminated, or included an advisement that the tenant had ten days to discuss the proposed termination with the landlord and the right to defend the action in court, as specifically required by both the terms of the lease and the applicable HUD regulations. Further, White's testimony established that one of the grounds listed in the complaint for summary ejectment, the destruction of the door, was not included in the Notice of Termination, depriving appellant of notice to prepare a defense as to that ground.

Competent evidence does not support the trial court's finding of fact 19 that the Notice of Termination included damage to the door as a reason for the termination. Competent evidence also does not sup-

port finding of fact 36 that appellee complied with all State and HUD requirements pertaining to notice and termination. We therefore find the trial court erred in these findings.

Appellant specifically raised the issue to the trial court that appellee failed to provide proof that proper Notice of Termination in compliance with the requirements of the lease was given. Although sufficient evidence was offered to support the trial court's findings and conclusions as to one of the grounds for summary ejectment of which appellant had proper notice, criminal activity, the record is devoid of evidence to support findings that appellant was provided with notice of the other lease requirements for termination of the agreement. As the findings of fact do not support the conclusion that appellee properly complied with the requirements of the notice provision of the parties' lease agreement, we find the trial court erred in granting summary ejectment against appellant, as appellee failed to show that the termination notice strictly complied with the terms of the lease. *Stanley*, 90 N.C. App. at 539, 369 S.E.2d at 385. We reverse the judgment and do not reach appellant's remaining assignments of error.

As the evidence of record does not support the trial court's findings as to proper Notice of Termination, the trial court's grant of summary ejectment is reversed.

Reversed.

Chief Judge MARTIN and Judge McCULLOUGH concur.