ELDER BROACH PROPERTIES, INC. AND ROBINSON PRESBYTERIAN CHURCH, Plaintiffs
v.
SARAH McNEEL AND SCOTT McNEEL, Defendants.
No. COA08-202
Court of Appeals of North Carolina
Filed December 16, 2008
This case not for publication
Robinson, Bradshaw & Hinson, P.A., by Jonathan C. Krisko, for plaintiffs-appellees.
Laura H. Budd, for defendants-appellants.
WYNN, Judge.
A tenant's obligation to pay rent is mutually dependent with a landlord's obligation to provide and maintain the premises in a fit and habitable condition.[1] Here, Defendants Sarah and Scott McNeel ("the McNeels") argue that they were entitled to terminate their lease early because Plaintiffs Elder Broach Properties, Inc. and Robinson Presbyterian Church (collectively "Elder Broach") failed to maintain the premises in a habitable condition. The McNeels also argue that the findings of fact in the District Court's order do not support its award of attorneys' fees. Because sufficient evidence supports the District Court's finding that Elder Broach maintained the premises in a fit and habitable condition, and that finding supports the conclusion that the McNeels were not entitled to terminate their lease early, we affirm that part of the court's judgment. However, we reverse the award of attorneys' fees because it is not supported by sufficient findings of fact.
The McNeels are former tenants of a house owned by Robinson Presbyterian Church and managed by Elder Broach Properties, Inc. The McNeels executed a lease agreement after inspecting the exterior of the house and viewing pictures of the house's interior. The term of the lease ran from 8 July 2004 to 30 June 2005.
When they moved into the house, the McNeels noted several unsatisfactory conditions on the Move-In Inspection Report Elder Broach provided. The McNeels did not insist that Elder Broach correct the unsatisfactory conditions; instead Mr. McNeel, a handyman operating a sole proprietorship, proposed that he would perform the repairs and maintenance for a fee. Mr. McNeel also proposed that Elder Broach could hire him for repairs on other properties it managed. Elder Broach agreed to Mr. McNeel's proposals, and the McNeels began corresponding with Elder Broach maintenance manager Jennifer Henke regarding repair work.
After Mr. McNeel completed the repair work, the McNeels became aware of excess moisture and mold spores in their new home. They notified Elder Broach and requested an investigation in writing on 13 September 2004. On 11 October 2004, Mr. McNeel faxed to Ms. Henke a request that Elder Broach provide a dehumidifier to deal with the moisture problems. In response, Ms. Henke notified Tom Pruitt, a church elder and general contractor, who hired Accudry's Tim Hodges to help investigate the moisture in the house.
During the investigation, Mr. Hodges and Mr. Pruitt noticed condensation on the windows and walls, and concluded that it probably formed because the McNeels were not using the air conditioning and ventilation system. Mr. Pruitt advised Mr. McNeel to try using the air conditioning and ventilation, and to call him back if the problem was not resolved.
Thereafter, the McNeels continued communication with Ms. Henke about the moisture and mold problems. On 9 November 2004, Mr. McNeel sent Ms. Henke an email with attached photographs showing evidence of mold on the windows, under beds, on furniture, linens, and on their infant daughter's items. The email stated, "[i]t's just getting bad. This is completely unacceptable and unhealthy." In response to this email, Ms. Henke contacted Mr. Pruitt's successor, Marc Chavaree, who dispatched certified mold inspector Shane Boshears to do another investigation. Mr. Boshears inspected the house on 11 November 2004, and concluded in an email addressed to Ms. Henke: "Yes they have a severe mold problem. . . . The mold is all over there [sic] furniture, clothing, windows, baby stuff, etc. etc. . . . In all seriousness the Church needs to do something before the whole house is ruined." Mr. Boshears recommended thatthe Church provide one or more dehumidifiers to deal with the problem. The Church provided a dehumidifier on 22 November 2004.
At trial, the McNeels testified that they began using the dehumidifier, but it did not solve the moisture and mold problems. They made further oral requests of Ms. Henke for solutions to the moisture problem and attendance to other maintenance requests. Also, the McNeels made the first documented request to be let out of their lease in an email to Ms. Henke on 21 December 2004. However, Mr. Chavaree testified at trial that the McNeels indicated to him more than once that the dehumidifier was working well and there were no further mold issues.
During their correspondence with Ms. Henke and Mr. Chavaree, the McNeels mentioned another house they had found and were hoping to purchase. The McNeels made an offer to purchase that house on 30 December 2004, and asked Ms. Henke about the consequences of breaking their lease with Elder Broach in January 2005. On 2 February 2005, the McNeels sent a thirty-day notice of intent to vacate to Elder Broach expressing that they had "enjoyed the [Elder Broach property]," and offering to perform a number of maintenance tasks free of charge prior to moving out. The notice made no mention of the moisture, mold, or alleged non-responsiveness to maintenance requests.
The McNeels moved out of the Elder Broach property on 28 February 2005. Elder Broach demanded rent on 1 March 2005; the McNeels responded in an 11 March 2005 letter that they would not pay the remainder of the lease because of damage to personal property caused by moisture and mold. In turn, Elder Broach filed a complaint in summary ejectment in the Small Claims Division of the District Court, and obtained favorable judgment for unpaid rent. Elder Broach President Ken Elder conducted a move-out inspection report of the house on 15 March 2005 on which he noted, inter alia, that mildew was present. At trial, he testified that the house was in very poor condition, with trash and personal items left behind.
At some point after they moved out, the McNeels requested an inspection of the Elder Broach property from the City of Charlotte. Code Enforcement Inspector Charles Hitsman did an inspection on 3 April 2005 and found numerous violations, including mold spores in the attic and interior of the house. A hearing on the violations was held before the City of Charlotte's Neighborhood Development Department on 5 May 2005. The Department issued Findings of Fact and an Order on 19 May 2005 directing the Church to make repairs.
The McNeels appealed the Small Claims Division judgment to the District Court, with Ms. McNeel asserting counterclaims for breach of implied warranty of habitability, unfair and deceptive trade practices, and attorneys' fees.[2] The Church intervened as Plaintiff, also alleging breach of contract. After a bench trial, the District Court found that the McNeels owed damages for unpaid rent, physical damage to the house, and maintenance work charged but unperformed by Mr. McNeel. The District Court largely discredited the McNeels' testimony and found that Ms. McNeel's unfair and deceptive trade practices ("UDTP") claim lacked a basis in fact and was malicious; therefore, the court awarded attorneys' fees to Elder Broach. After the District Court entered its judgment on 12 September 2006, the McNeels discovered the Neighborhood Development Department's 19 May 2005 order and moved for a new trial on the basis of newly discovered evidence. The District Court denied the motion in an order entered on 25 July 2007.
On appeal from the District Court's 12 September 2006 judgment and 25 July 2007 order, the McNeels argue that the District Court erred: (I) to the extent it concluded that the McNeels did not provide notice of uninhabitable conditions in the house; (II) by concluding that Ms. McNeel had not proved her UDTP claim; (III) by concluding that Ms. McNeel's UDTP claim was frivolous and awarding attorneys' fees on that basis; and (IV) by denying their motion for a new trial on the basis of newly discovered evidence.

I.
In their first assignment of error, the McNeels argue that the trial court applied the wrong legal standard, in effect requiring them to show that they provided notice to Elder Broach of uninhabitable conditions at the Elder Broach property. Furthermore, the McNeels argue that the findings of fact in the District Court's 12 September 2006 judgment do not support the legal conclusions that they breached their lease and failed to prove their breach of implied warranty of habitability counterclaim.
This Court reviews whether a trial court applied the correct legal standard de novo, and the trial court's findings of fact are conclusive on appeal "if there is competent evidence to support them, even though there may be evidence that would support findings to the contrary." Biemann & Rowell Co. v. Donohoe Cos., 147 N.C. App. 239, 242, 556 S.E.2d 1, 4 (2001) (citations omitted). The Residential Rental Act mandates that landlords must provide premises fit for human habitation, and that the tenant's obligation to pay rent and the landlord's obligation to keep the premises in a fit and habitable condition are mutually dependent. N.C. Gen. Stat. §§ 42-41 to -42 (2007); see also Creekside Apartments v. Poteat, 116 N.C. App. 26, 33-34, 446 S.E.2d 826, 831 (1994).
The McNeels argue that the District Court erred by requiring them to give Elder Broach notice of uninhabitable conditions at the Elder Broach property. However, notice only becomes relevant under N.C. Gen. Stat. § 42-42(a)(4) concerning the enumerated "facilities and appliances supplied or required to be supplied" by the landlord. Where those "facilities" or "appliances" are involved, the tenant must give the landlord written notice that they are in disrepair; the tenant is not required to give written notice "where the conditions enumerated in G.S. 42-42(a)(4) are the same conditions which render the premises unfit and uninhabitable. . . ." Surratt v. Newton, 99 N.C. App. 396, 405-06, 393 S.E.2d 554, 559 (1990). Accordingly, notice is immaterial in this case because the District Court determined that Elder Broach delivered and maintained the Elder Broach property in a fit and habitable condition. Therefore, the question for this Court is whether competent evidence supports the District Court's finding of fact. See Donohoe Cos., 147 N.C. App. at 242, 556 S.E.2d at 4.
There is ample evidence in the record to sustain the District Court's finding that Elder Broach delivered and maintained the house in a fit and habitable condition. After reviewing pictures of the house's interior and touring the exterior with Mr. Elder, the McNeels apparently found the house habitable because they moved in. Furthermore, the McNeels occupied the house for more than two months before they first complained about mold or moisture. Accordingly, competent evidence existed that the house was delivered in a fit and habitable condition.
Likewise, there was competent evidence that Elder Broach maintained the house in a fit and habitable condition. Albeit relatively slow at times, Elder Broach answered each of the McNeels' requests for investigation of the mold and moisture. When the McNeels emailed Ms. Henke on 13 September 2004, Mr. Hodges and Mr. Pruitt investigated on 11 October 2004. In response to the McNeels' 9 November 2004 email, Shane Boshears investigated and recommended a dehumidifier, which Elder Broach provided. Mr. Chavaree testified that the McNeels indicated more than once that the dehumidifier had corrected the problem. Therefore, competent evidence supports the District Court's findings that the house was delivered and maintained in a fit and habitable condition. Those findings, in turn, support the District Court's conclusions that the McNeels were not entitled to terminate their lease and failed to prove their breach of implied warranty of habitability claim. This assignment of error is overruled.

II.
In their next assignment of error, the McNeels argue that the District Court erred by concluding that Ms. McNeel did not prove her UDTP claim, particularly for the period after they vacated the house, from 1 March 2005 to 30 June 2005. They contend that even if Elder Broach did not have notice of uninhabitable conditions in the house prior to 5 April 2005, it was notified on that date by the Neighborhood Development Inspector's citation, but continued to charge the McNeels for rent through the end of the lease term in June 2005.
A landlord commits an unfair or deceptive trade practice by charging a tenant rent for a dwelling the landlord knows is uninhabitable. Whether a landlord has committed an unfair or deceptive trade practice is a case by case inquiry; a violation is marked by immoral, unethical, oppressive, unscrupulous, or substantially injurious conduct. N.C. Gen. Stat. § 75-1.1 (2007); Dean v. Hill, 171 N.C. App. 479, 486, 615 S.E.2d 699, 703 (2005). "Upon properly submitted issues the jury is to determine the facts and the trial court is to determine, as a matter of law, whether the landlord engaged in unfair or deceptive trade practices."Foy v. Spinks, 105 N.C. App. 534, 540, 414 S.E.2d 87, 90 (1992) (citations omitted). Here, the trial judge was the trier of fact and found that the house was fit and habitable during the McNeels' occupancy. As noted above, that finding is supported by competent evidence. We need go no further because a landlord is entitled to charge rent for a fit and habitable premises. Accordingly, this assignment of error is also overruled.

III.
Next, the McNeels assign error to the District Court's conclusion that Ms. McNeel "knew or should have known that her unfair trade practices claim was frivolous and malicious." See N.C. Gen. Stat. § 75-16.1(2) (2007). The McNeels contend that this conclusion constitutes an abuse of discretion because it is unsupported by sufficient findings of fact. We agree.
"The decision whether or not to award attorney fees under section 75-16.1 rests within the sole discretion of the trial judge. And if fees are awarded, the amount also rests within the discretion of the trial court and we review such awards for abuse of discretion. . . ." Printing Servs. of Greensboro, Inc. v. Am. Capital Group, Inc., 180 N.C. App. 70, 81, 637 S.E.2d 230, 236 (2006), aff'd, 361 N.C. 347, 643 S.E.2d 586, 586-87 (2007) (citations omitted). Before the trial court may award attorneys' fees against a party asserting a UDTP claim, it must make findings of fact sufficient to support the conclusion that the party "knew, or should have known, the action was frivolous and malicious." N.C. Gen. Stat. § 75-16.1(2). The District Court made the following relevant findings of fact before concluding that attorneys' fees should be awarded against Ms. McNeel:
15. Based on the testimony offered at trial, including the specific testimony of the Defendant-Counterclaimant Sarah McNeel and Defendant Scott McNeel, the Court finds that the allegations made by Defendant-Counterclaimant in support of her claims for breach of the landlord's implied warranty of habitability and unfair trade practices under N.C.G.S. § 75-1.1 et seq. lack a basis in fact and the Defendants' testimony offered at trial concerning material facts in this case was simply not true. Further, the Court finds that the purpose of Defendant-Counterclaimant's unfair trade practices counterclaim was to gain a financial advantage.
16. The Court finds that the Defendant-Counterclaimant's unfair trade practices claim is frivolous in that it lacks a reasonable basis in fact and malicious in that it constitutes an abuse of the legal process. Additionally, the Court finds that Defendant-Counterclaimant knew or should have known that her unfair trade practices claim was frivolous and malicious.
Thus, in paragraph 15, the District Court found that the McNeels' allegations and trial testimony lacked credibility, and that Ms. McNeel instituted her UDTP claim to gain a financial advantage. To the extent that paragraph 16 can be construed to contain any additional findings of fact, the District Court found that Ms. McNeel's claim "constitutes an abuse of the legal process."
Although the District Court discredited the McNeels' allegations and trial testimony, it was still required to make findings of fact sufficient to support the conclusion that Ms. McNeel "knew or should have known" that her UDTP claim was frivolous and malicious. See Pierce v. Reichard, 163 N.C. App. 294, 300, 593 S.E.2d 787, 791 (2004) (trial court must make findings of fact sufficient to support one of the two enumerations under N.C. Gen. Stat. § 75-16.1). While the District Court's findingsthat Ms. McNeel instituted her UDTP claim to gain a financial advantage and that her claim abused the legal process would support the conclusion that her claim was frivolous and malicious, the court's judgment mentions no evidence in support of those findings. Nor does Elder Broach, urging this Court to uphold the award of attorneys' fees, cite any evidence tending to show that Ms. McNeel asserted her UDTP claim to gain a financial advantage.
In contrast, the record reflects that the McNeels in fact experienced mold and moisture problems during their tenancy, and that extensive correspondence took place between the McNeels and Elder Broach to remedy the problem. Without evidence showing that Ms. McNeel merely sought to gain a financial advantage by filing her UDTP claim, these findings constitute an abuse of the District Court's discretion. Accordingly, the District Court's award of attorneys' fees is reversed.

IV.
In their final assignment of error, the McNeels argue that the trial court erred by refusing to grant their motion for a new trial after they discovered the Charlotte Neighborhood Development Committee's 19 May 2005 Findings of Fact and Order ("committee's order"). Elder Broach contends that the committee's order was merely cumulative and discoverable by the McNeels if they had exercised due diligence prior to trial.
The decision whether to grant a motion for a new trial based on newly discovered evidence is left to the trial judge's discretion and is reviewable only for an abuse of discretion. State v. Beaver, 291 N.C. 137, 143, 229 S.E.2d 179, 182-83 (1976) (citations omitted). Seven prerequisites must appear by affidavit before a new trial should be granted because of newly discovered evidence:
(1) the witness or witnesses will give newly discovered evidence; (2) the newly discovered evidence is probably true; (3) the evidence is material, competent and relevant; (4) due diligence was used and proper means were employed to procure the testimony at trial; (5) the newly discovered evidence is not merely cumulative or corroborative; (6) the new evidence does not merely tend to contradict, impeach or discredit the testimony of a former witness; and (7) the evidence is of such a nature that a different result will probably be reached at a new trial.
Id.
Here, Elder Broach argues persuasively that the committee's order is merely cumulative. The committee's order contains little factual information, but it lists as a finding of fact that the "[Elder Broach property] is in violation of one or more of the minimum standards of fitness." However, Inspector Hitsman testified at trial regarding his inspection of the house, issuance of the Complaint and Notice of Hearing, and the committee's order. The record does not reflect that Inspector Hitsman specifically testified that the house was "unfit" or "uninhabitable," but he testified in detail to the Code violations and other unsatisfactory conditions. Therefore, any information in the committee's order was either testified to by Inspector Hitsman, or was a fair inference from his trial testimony. The committee's order is merely cumulative to Inspector Hitsman's trial testimony. Accordingly, this assignment of error is without merit.
Affirmed in part, reversed in part.
Judges BRYANT and ARROWOOD concur.
Report per Rule 30(e).
NOTES
[1] N.C. Gen. Stat. § 42-41 (2007).
[2] The record reflects that Ms. McNeel asserted the counterclaims independently in the appeal to the District Court. As the District Court did in its judgment, the counterclaims will be referenced in this opinion as Ms. McNeel's.