An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-805

Filed 3 December 2025

Perquimans County, No. 22CVD000268-710

MARTIN KENT SAWYER
MARTIN KENT SAWYER REVOCABLE TRUST;
WINFALL BEACH, LLC, Plaintiffs,

v.

KENDRA BILLUPS, Defendant.

Appeal by Defendant from judgment entered 28 November 2023 by Judge Amber Davis in Perquimans County District Court. Heard in the Court of Appeals 26 February 2025.

> *Legal Aid of North Carolina Inc., by Celia Pistolis, Luis Juan Pinto, and Elliotte Kiel, for Defendant-Appellant.*
>
> *No brief filed on behalf of Plaintiffs-Appellees.*

CARPENTER, Judge.

This case concerns the termination of a written lease agreement (the "Lease") executed by Martin Kent Sawyer, Martin Kent Sawyer Revocable Trust, and Winfall Beach, LLC (collectively, "Plaintiffs") and Kendra Billups ("Defendant"). Defendant appeals from the trial court's 28 November 2023 judgment (the "Order"), which

granted Plaintiffs possession of a single-wide mobile home (the "Home"), located in Hertford, North Carolina; awarded Plaintiffs $1,200 for past due rent; awarded Defendant a $150 rent abatement for the months of December 2022 through April 2023; and denied Defendant's counterclaim for unfair and deceptive trade practices ("UDTP").

On appeal, Defendant argues the trial court erred by: (1) concluding Plaintiffs' notice to vacate was adequate to terminate the Lease; (2) concluding Defendant was only entitled to rent abatement for the months of December 2022 through April 2023; and (3) denying Defendant's UDTP counterclaim. Because the trial court's order contains insufficient findings of fact, we are unable to conduct meaningful appellate review. Accordingly, we remand to the trial court for additional findings of fact.

## I. Factual & Procedural Background

On 2 December 2022, Plaintiffs initiated a summary ejectment proceeding against Defendant in small claims court. On 15 December 2022, the magistrate entered judgment in favor of Plaintiffs. On 28 December 2022, Defendant appealed to district court and executed a bond to stay execution of the judgment (the "Rent Bond"). On 25 January 2023, Defendant filed an answer, asserting counterclaims for breach of implied warranty of habitability and UDTP. When Defendant failed to pay the Rent Bond in March 2023, Plaintiffs obtained a writ of possession of real property on 29 March 2023, which was executed on 3 April 2023. By this time, Defendant had vacated the Home but was still using it to store her personal property. On 8 August

2023, the trial court conducted a bench trial and the evidence tended to show the following.

On 28 December 2020, Defendant signed the Lease. The Lease is a pre-printed form entitled: "Winfall Beach Mobile Home Park Rules, Regulations & Agreements." Paragraph 2 of the Lease provides, in pertinent part, that: "All tenants must give a 30 day notice before moving or pay an additional month's rent." The Lease further provides, in paragraph 16 that the Lease

> is a month to month lease *with a 30 day notice to vacate or move required.* If eviction become necessary, it will be done according to North Carolina law. No reason for eviction has to be given, but violation of the above rules and regulations may result in such action.

Under the terms of the Lease, Defendant was required to pay $650 on the first of each month with a late fee being imposed after the fifth. Defendant understood the Lease provisions to mean that both parties were required to give 30 days' notice before terminating the Lease. In February 2021, Defendant moved into the Home and gave birth to a daughter.

That summer, Defendant began to notice defects in the Home. At the time, the Home was cooled by two portable air conditioning units which were plugged into wall outlets. One unit was in Defendant's bedroom and the other was in the living room. One day, Defendant heard a "big pop" immediately before losing power in both rooms. Defendant unplugged both units and observed that plastic from one of the wall outlets had melted onto the plug of larger air conditioning unit. Thereafter, Plaintiff

contacted Kate Ferebee, Plaintiffs' property manager, to report the incident. Ferebee instructed Defendant on how to use the circuit breaker to restore power and instructed Defendant to stop using the damaged wall outlet.

In December 2021, the furnace in the Home began vibrating loudly which continued into early February 2022. When the furnace stopped working completely, Plaintiff contacted Ferebee to report that she did not have heat in the Home. Specifically, Defendant texted Ferebee on 6 February 2022, saying: "My heat went out not too long ago . . . I flipped the breaker but it won't cut back on." Ferebee responded, saying she would send someone to the Home as soon as she could. Ferebee also asked Defendant: "Do u have an electric heater or anything for now?" Defendant replied: "It's still warm in here now because it just went out about 45 minutes ago but no, I don't have an electric heater here."

That afternoon, Defendant's father came to help Defendant with the furnace. After Defendant's father "flipp[ed] the breaker a few times" restoring heat to the Home, Defendant notified Ferebee that her father "got [the furnace] to work." Defendant stated she did not want Ferebee to "worry about us being without [heat] today" but asked Ferebee to send someone to the Home to inspect the furnace. Ferebee responded, informing Defendant that someone would come by Wednesday or Thursday of that week unless Ferebee was able to "get someone to go out there before then." No one came to inspect the furnace that week. When Defendant paid her rent in March and April 2022, she asked whether someone was coming to inspect the

furnace but "no one ever showed up." The summer months came and went. Then, on 27 September 2022, when Defendant paid her rent plus a late fee, Defendant again asked whether someone was coming to inspect the furnace. According to Defendant, from February 2022 until her departure, she could only regulate the heat by turning the circuit breaker for the furnace on and off as needed. Ferebee denied any communication with Defendant regarding the furnace issues after the 6 February 2022 text exchange.

Plaintiffs accepted Defendant's September rent payment and late fee. Then, on 11 October 2022, Plaintiffs initiated a summary ejectment proceeding in small claims court, alleging Defendant's September rent payment was untimely and that she failed to pay her rent for October 2022, bringing the total amount of past due rent to $650. The small claims court dismissed Plaintiffs' action with prejudice on 26 October 2022. Thereafter, on 17 November 2022, Plaintiffs mailed Defendant a notice of termination by certified mail. Defendant, however, did not receive the notice because she had misplaced her mailbox key. On 28 November 2022, Ferebee texted Defendant informing her that the post office had been trying to deliver the notice of termination. Ferebee informed Defendant, as a "courtesy," that she was required to vacate the Home by 1 December 2022. Sometime in November 2022, a non-profit agency submitted a rent payment to Plaintiffs on Defendant's behalf, but Plaintiffs did not cash the check.

On 5 December 2022, Defendant, who was still residing in the Home, smelled

smoke and contacted the Winfall Fire Department. After inspecting the Home, the fire department checked the furnace and prepared an incident report stating that the furnace was "staying on and not cutting off." The report further stated that the furnace's "electric meter was at 91°." Thereafter, Defendant contacted a certified home inspector who inspected the Home and noted that it had multiple issues. The home inspector recommended that Defendant contact an electrician. The electrician found duct tape and masking tape around the electrical sockets in the walls. Ferebee was unaware that the fire department, an inspector, and an electrician visited the Home.

On 28 November 2023, the trial court entered the Order, concluding Defendant received adequate notice of non-renewal of the Lease pursuant to section 42-14 of our General Statutes. Additionally, the trial court: granted Plaintiffs possession of the Home; awarded Plaintiffs $1,200—an abated amount of past due rent, less funds held by the clerk's office; awarded Defendant a rent abatement of $150 for the months of December 2022 through April 2023; and denied Defendant's UDTP counterclaim. On 28 December 2023, Defendant filed written notice of appeal.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(2) (2023).

## III. Motion to Strike Plaintiffs' Brief

On 25 November 2024, Defendant filed a motion to strike Plaintiffs' brief under Rule 37 of the North Carolina Rules of Appellate Procedure. *See* N.C. R. App. P.

37(a). Defendant argues that Ferebee—who signed the certificate of compliance in Plaintiffs' brief and whose blank signature block appears on the certificate of service in Plaintiffs' brief—engaged in the unauthorized practice of law. *See* N.C. Gen. Stat. § 84-2.1 (2023) (defining "practice of law" as "performing any legal service for any other person, firm or corporation, with or without compensation . . ."). Plaintiffs acknowledge, in their response to Defendant's motion, that Ferebee is not licensed to practice law in this State. We agree with Defendant that by indicating she has participated in the preparation of Plaintiffs' appellate brief, Ferebee engaged in the unauthorized practice of law on Plaintiffs' behalf. *See Lexis-Nexis, Div. of Reed Elsevier, Inc. v. Travishan Corp.*, 155 N.C. App. 205, 209, 573 S.E.2d 547, 549 (2002) (holding "that in North Carolina a corporation must be represented by a duly admitted and licensed attorney-at-law and cannot proceed *pro se* unless doing so in accordance with the exceptions set forth in this opinion"). Accordingly, we allow Defendant's motion to strike Plaintiff's brief.

## IV. Issues

The issues are whether the trial court erred by: (1) concluding Plaintiffs' notice to vacate was adequate to terminate the Lease and return possession of the Home to Plaintiffs; (2) concluding Defendant was only entitled to a rent abatement for the months of December 2022 through April 2023; and (3) denying Defendant's UDTP counterclaim.

## V. Analysis

"[A] trial court's findings of fact in a bench trial have the force of a jury verdict and are conclusive on appeal if there is competent evidence to support them, even though [] there may be evidence that would support findings to the contrary." *Biemann & Rowell Co. v. Donohoe Cos, Inc.*, 147 N.C. App. 239, 242, 556 S.E.2d 1, 4 (2001) (citing *State v. Coronel*, 145 N.C. App. 237, 250, 550 S.E.2d 561, 570 (2001)). The trial court's conclusions of law and ensuing judgment must be supported by the findings. *Cartin v. Harrison*, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (2002). We review the trial court's conclusions of law de novo. *Biemann & Rowell Co.*, 147 N.C. App. at 242, 556 S.E.2d at 4 (citations omitted). "'Under a *de novo* review, [this Court] considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

Although the trial court is not required to "recite all of the evidentiary facts[,]" it must find the "ultimate facts, i.e., those specific material facts which are determinative of the questions involved in the action and from which an appellate court can determine whether the findings are supported by the evidence and, in turn, support the conclusions of law reached by the trial court." *Mann Contractors, Inc. v. Flair with Goldsmith Consultants-II, Inc.*, 135 N.C. App. 772, 774, 522 S.E.2d 118, 120–21 (1999); *see also* N.C. Gen. Stat. § 1A-1, Rule 52(a)(1) (2023) ("In all actions tried upon the facts without a jury . . . the court shall find the facts specially and state

separately its conclusions of law thereon and direct the entry of the appropriate judgment.").

**A. Notice to Vacate**

First, Defendant argues the trial court erred by granting Plaintiffs' possession of the Home because its conclusion that Plaintiffs' notice was adequate to terminate the Lease was not supported by the findings or competent evidence.

Unless a lessor and lessee agree to a different type and period of notice, a month-to-month tenancy may be terminated by providing notice seven days or more before the end of the current month of the tenancy. N.C. Gen. Stat. § 42-14 (2023). However, " '[w]hen termination of a lease depends upon notice, the notice must be given in strict compliance with the contract as to both time and contents.' " *Lincoln Terrace Assocs, Ltd. v. Kelly*, 179 N.C. App. 621, 623, 635 S.E.2d 434, 436 (2006) (quoting *Stanley v. Harvey*, 90 N.C. App. 535, 539, 369 S.E.2d 382, 285 (1988)).

Here, paragraph 2 of the Lease states that: "All tenants must give a 30 day notice before moving or pay an additional month's rent." Paragraph 16 of the Lease further provides: "30 day notice to vacate or move [is] required" and "[i]f eviction becomes necessary, it will be done according to North Carolina law. No reason for eviction has to be given, but violation of the above rules and regulations may result in such action." Defendant testified that she understood these notice provisions to mean that *both* parties were required to provide 30 days' notice before terminating the Lease.

With respect to notice and termination of the Lease, the trial court found that:

> 5. On November 17, 2022 Plaintiff mailed Defendant notice of non-renewal of lease by certified mail, demanding possession of the property from Defendant on December 1, 2022.
>
> 6. Defendant testified that she lost her mailbox key and she only received the notice by picking it up from the post office following a text message conversation with Plaintiff's manager on November 28, 2022, Defendant's Exhibit 1.

The trial court did not make any factual findings regarding the termination provisions provided by the Lease. Conclusion of law 1 states:

> 1. The [c]ourt concludes that Plaintiff has proven by a greater weight of the evidence presented that Defendant received adequate notice pursuant to N.C. Gen. Stat. 42-14 of non-renewal of her month to month lease, and that Plaintiff is entitled to possession and rental arrears as outlined in this Judgment.

In concluding that Plaintiff's 17 November 2022 notice to vacate was adequate to terminate the Lease, the trial court relied on section 42-14 of our General Statutes, which provides the default notice requirements to terminate a month-to-month lease when no notice provisions have been agreed upon by the parties. *See* N.C. Gen. Stat. § 42-14. But here, two separate notice provisions were provided by the Lease, one of which could reasonably be interpreted to apply to Plaintiffs.

Paragraph 16 of the Lease, containing the 30-day notice provision, does not specify whether it is applicable to the lessor, lessee, or both parties. If paragraph 16 was applicable to Plaintiffs, the 2 December 2022 summary ejectment proceeding was

premature. Instead, a summary ejectment proceeding would have been proper on or after 17 December 2022, 30 days after the notice to vacate or move was mailed to Defendant. On the other hand, if paragraph 16 in the Lease was not applicable to Plaintiffs, and only applied to Defendant, the summary ejectment proceeding was timely because the Lease was terminated as of 24 November 2022. Either way, the trial court's findings did not resolve the issue.

Because the Order does not address whether the 30-day notice to "vacate or move" applied to Plaintiffs, we are unable to discern whether conclusion of law 1 is supported by the findings. While the trial court is not required to make findings regarding all of the evidence, whether the parties agreed to a different period of notice overriding the statutory default notice requirements was a "material fact" in this case. *See Mann Contractors, Inc.*, 135 N.C. App. at 774, 522 S.E.2d at 120–21. Thus, absent findings regarding how the Lease's notice provisions were to apply, we are unable to determine whether Plaintiffs' 17 November 2022 notice to vacate was adequate. Seemingly, the record evidence could support either of the aforementioned applications of the Lease's notice provisions, but the trial court must determine this material fact. Accordingly, we remand to the trial court for additional findings concerning whether Plaintiffs were required to provide Defendant with 30 days' notice to vacate the Home pursuant to the terms of the Lease.

**B. Rent Abatement**

Next, Defendant asserts the evidence demonstrates she was entitled to a rent

abatement beginning in February 2022, when she first notified Plaintiff that the furnace was not working properly, rather than December 2022.

Under the Residential Rental Agreements Act ("RRAA"), a lessor "impliedly warrants" to a lessee that the residential premises rented or leased "are fit for human habitation." *Miller v. C.W. Myers Trading Post. Inc.*, 85 N.C. App. 362, 366, 355 S.E.2d 189, 192 (1987) (citation omitted). Generally speaking, landlords are required to "provide fit premises," *Stikeleather Realty & Invs. Co. v. Broadway*, 241 N.C. App. 152, 161, 772 S.E.2d 107, 113 (2015), by complying with applicable building and housing codes, making repairs to keep the premises in a fit and habitable condition, keeping common areas in a safe condition, and maintaining electrical and heating systems in good and safe working order, *see* N.C. Gen. Stat. § 42-42(a) (2023). When a landlord breaches the implied warranty of habitability, a tenant may bring an action seeking rent abatement based on the landlord's noncompliance with the RRAA. *Stikeleather Realty & Invs. Co.*, 241 N.C. App. at 161–62, 772 S.E.2d at 114 (citation omitted). The "[r]estitutionary remedy of rent abatement compensates tenants for defective conditions of a premises which render it unfit for human habitation." *Id.* at 162, 772 S.E.2d at 114. Rent abatement is "calculated as the difference between the fair rental value of the premises if as warranted . . . and the fair rental value of the premises in their unfit condition for any period of the tenant's occupancy during which *the finder of fact determines the premises were uninhabitable . . . .*" *Miller*, 85 N.C. App. at 371, 355 S.E.2d at 194 (emphasis added).

- 12 -

Here, the trial court made the following findings regarding the condition of the

Home:

> 9. Defendant testified to defects in the condition of the premises, and presented a home inspection report conducted December 26, 2022, by Mr. Jeff Hardesty, a certified home inspector (Defendant's exhibit 5).
>
> 10. The [c]ourt also heard expert testimony by Mr. Hardesty regarding the condition of the premises as cited in his report.
>
> 11. [Ferebee] testified that she had no knowledge of any alleged defects in the premises as cited in the report prior to the lawsuit.
>
> 12. Plaintiff and Defendant both testified to a text message conversation in February 2022 regarding problems with the furnace in the property, admitted as Defendant's Exhibit 3.
>
> 13. Beginning in December 2022, the fair market rental value of the property was $500 per month.

Based on these findings, the trial court determined, in conclusion of law 2, that:

> 2. The [c]ourt concludes that some of the damages cited by Defendant entitle her to a limited abatement of rent for the months of Plaintiff's claims for the months of December 2022, and January through April of 2023.

Although the trial court determined Defendant was "entitled to a limited

abatement of rent," it failed to conclude that the Home was uninhabitable. Therefore,

we cannot determine whether Defendant was entitled to rent abatement earlier, or

at all, because the trial court did not specify the period of uninhabitability. *See Miller*,

85 N.C. App. at 371, 355 S.E.2d at 194. Accordingly, we remand for additional

findings on the period of uninhabitability.

## C. UDTP

Finally, Defendant argues the trial court erred by denying her UDTP counterclaim. Defendant asserts she established a claim for UDTP because Plaintiffs violated the RRAA and failed to make repairs while continuing to demand rent.

It is unlawful to engage in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce . . . ." N.C. Gen. Stat. § 75-1.1(a) (2023). "Our courts previously have considered a trade practice to be unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Dean v. Hill*, 171 N.C. App. 497, 485, 615 S.E.2d 699, 702 (2005) (internal quotation marks and citations omitted). "Residential rental agreements fall within Chapter 75 because 'the rental of residential housing is' considered commerce pursuant to N.C. Gen. Stat. § 75-1.1." *Id.* at 485, 615 S.E.2d at 702 (quoting *Love v. Pressley*, 34 N.C. App. 503, 516, 239 S.E.2d 574, 583 (1977)); *see* N.C. Gen. Stat. § 75-1.1(b) (2023) (defining "commerce"). Specifically, a UDTP claim may exist where a landlord continues to collect rent payments "after having knowledge of the uninhabitable nature" of the premises. *Dean*, 171 N.C. App. at 486, 615 S.E.2d at 703. For instance, in *Foy v. Spinks*, we explained

> where a tenant's evidence establishes the residential rental premises were unfit for human habitation and the landlord was aware of needed repairs but failed to honor his

> promises to correct the deficiencies and continued to demand rent, then such evidence would support a factual finding by the [fact finder] that the landlord committed an unfair or deceptive trade practice.

105 N.C. App. 534, 540, 414 S.E.2d 87, 89–90 (1992) (citing *Allen v. Simmons*, 99 N.C. App. 636, 644–45, 394 S.E.2d 478, 483–84 (1990)).

Here, similar to our reasoning outlined above, we cannot review the trial court's determination regarding Defendant's UDTP counterclaim because the Order does not indicate if or when the Home was uninhabitable. Further, the Order does not indicate if or when Plaintiffs had knowledge of the uninhabitable nature of the Home. Finding of fact 12 indicates that Defendant texted Ferebee in February 2022 regarding problems with the furnace, but the trial court failed to specify when Plaintiffs were notified of the uninhabitable nature of the Home. *See Foy*, 105 N.C. App. at 540, 414 S.E.2d at 89–90; *Dean*, 171 N.C. App. at 485, 615 S.E.2d at 702–03. Thus, we cannot discern on appeal whether the trial court's denial of Defendant's UDTP counterclaim was supported by the findings. Accordingly, we remand for further fact finding on this issue.

## VI. Conclusion

Defendant's motion to strike Plaintiff's brief is allowed. Because the trial court's findings and conclusions regarding the issues raised on appeal are inadequate to permit appellate review, we remand for further fact finding on the existing record.

REMANDED.

Judges ARROWOOD and STADING concur.

Report per Rule 30(e).