DARRELL FOY AND PATRICIA FOY, PLAINTIFFS v. MARGARET SPINKS, DEFENDANT

No. 9021DC1336

(Filed 3 March 1992)

**1. Trial § 40.1 (NCI3d) — alternative issues — reversible error**

There was reversible error in a landlord-tenant action where the trial court submitted one issue which embodied

FOY v. SPINKS

[105 N.C. App. 534 (1992)]

two separate questions, and another which included the term and/or.

**Am Jur 2d, Trial § 1139.**

2. **Appeal and Error § 147 (NCI4th)— alternative issues—no objection—proposed instructions submitted**

It was not necessary for plaintiffs to repeat their objections to jury instructions which included alternative verdicts where they had timely submitted proposed instructions to the trial judge.

**Am Jur 2d, Trial § 1459.**

3. **Unfair Competition § 1 (NCI3d)— landlord-tenant dispute—counterclaim for unfair practices—premises unfit for habitation**

The trial court did not err by denying plaintiffs' motion for a directed verdict on defendant's counterclaim for unfair or deceptive practices in a landlord-tenant dispute. It has been held under similar facts that where a tenant's evidence establishes that the residential rental premises were unfit for human habitation and the landlord was aware of needed repairs but failed to honor his promises to correct the deficiencies and continued to demand rent, then such evidence would support a factual finding by the jury that the landlord committed an unfair or deceptive trade practice.

**Am Jur 2d, Landlord and Tenant § 642.**

**Modern status of rules as to existence of implied warranty of habitability or fitness for use of leased premises. 40 ALR3d 646.**

4. **Landlord and Tenant § 19.1 (NCI3d)— rent abatement—measure of damages—erroneous instruction**

The trial court improperly instructed the jury on the measure of damages under the Residential Rental Agreements Act, N.C.G.S. §§ 42-38, *et seq.*, where the court failed to instruct the jury that damages for rent abatement are limited to the amount of rent actually paid by the tenant for the substandard housing, plus any additional special or consequential damages alleged and proved.

**Am Jur 2d, Landlord and Tenant § 526.**

Measure of damages for landlord's breach of implied warranty of habitability. 1 ALR4th 1182.

5. **Trial § 32 (NCI3d)— pattern jury instructions—preliminary civil instructions—mandate as to facts**

The Court of Appeals observed in a landlord-tenant action that the jury did not receive preliminary instructions or a clear mandate on each issue. The preliminary civil instructions help orient and educate the jury on such matters as credibility of witnesses and weighing the evidence; also, it is the duty of the court, without a request, to explain the law and apply it to the evidence and to give a clear mandate as to the facts the jury would have to find in order to answer an issue either in the affirmative or in the negative.

Am Jur 2d, Trial §§ 1105, 1281.

Judge WELLS concurring.

APPEAL by plaintiffs from judgment entered 13 August 1990, *nunc pro tunc* 23 July 1990, and by defendant from order entered 4 September 1990 by *Judge Margaret L. Sharpe* in FORSYTH County District Court. Heard in the Court of Appeals 4 November 1991.

This appeal arises out of a landlord-tenant dispute between the landlords Darrell and Patricia Foy [plaintiffs] and the tenant Margaret Spinks [defendant]. Plaintiffs owned a house in Winston-Salem, North Carolina and defendant had resided there as a tenant since 1982. From 1982 through 1984, defendant paid $235 per month in rent. In January 1985, the rent was raised to $250 per month and in January 1990, the rent was raised to $300 per month. Beginning in November 1989, defendant stopped paying rent because she claimed the house was unfit.

Defendant's evidence at trial showed that the roof leaked for several years and eventually collapsed in 1986, causing damage to her belongings in the amount of $216; that plaintiffs instituted repairs to the roof but the leakage continued; the furnace did not function properly and plaintiffs were informed several times that it needed to be replaced, however, only minor repairs were made and as a result there were numerous occasions when defendant had no heat in her home. Other problems defendant testified to included commodes overflowing, drafty windows and holes in the walls. Further, she testified that she had repeatedly informed plain-

tiffs of the problems with the house, but that little or no work was ever performed to make the necessary repairs.

Plaintiffs' evidence disclosed that repairs were promptly made once they received notice of any problems. Also, when the City of Winston-Salem inspected the premises and notified plaintiffs of required repairs in November 1989, plaintiffs eliminated all unfit conditions within thirty days. The City reinspected the following April and plaintiffs remedied four additional "unfit" conditions within six days. However, testimony from the City Housing Inspector tended to show that even after the second reinspection, the house was still not in compliance with the City Code.

On 18 January 1990, plaintiffs filed this action for summary ejectment, seeking possession of the premises and the rent owed for the months of December 1989 and January 1990. The Magistrate granted summary ejectment on 31 January 1990. Defendant appealed to the District Court for a trial *de novo*, and then began paying her monthly rent to the Clerk of Court. Defendant filed an answer denying plaintiffs' claim and counterclaimed, alleging plaintiffs had violated the rental agreement by failing to keep the premises in a fit and habitable condition pursuant to G.S. 42-42, thereby entitling defendant to rent abatement. She also alleged an unfair or deceptive trade practice under G.S. Chapter 75, *et seq.*

*Petree Stockton & Robinson, by R. Rand Tucker and Mark A. Stafford, for plaintiff appellants-appellees.*

*Legal Aid Society of Northwest North Carolina, Inc., by Joseph P. Henry, for defendant appellee-appellant.*

WALKER, Judge.

Trial was held during the 16 July 1990 session of District Court and the jury awarded plaintiffs the sum of $750 for back rent and awarded defendant $4,900 on her counterclaim for retroactive rent abatement for 1987-1990. In addition $3,750 was awarded to defendant for the 1986-1987 year. The trial court then found plaintiffs had committed an unfair trade practice and trebled the jury's verdict to $25,950. Plaintiffs' verdict is not in dispute and accordingly we affirm that portion of the judgment. However, we reverse the judgment in favor of defendant and remand the case for a new trial consistent with our decision.

## I.

[1] Plaintiffs assign error to the trial court's submission of the third and fourth issues in the alternative, thus allowing the jury to answer these issues without reaching an unanimous verdict. We agree. The third issue was submitted and answered as follows:

3. Did plaintiffs fail to maintain the house rented by defendant in compliance with the Winston-Salem Housing Code or fail to make all repairs necessary to put and keep the house in fit and habitable condition?

ANSWER: Yes

This issue embodies two separate questions: (1) "Did the plaintiffs fail to maintain the house in compliance with the housing code?"; *or* (2) "Did plaintiffs fail to make all repairs necessary to put and keep the house in a fit and habitable condition?" Our Supreme Court has recognized, "it is misleading to embody in one issue two propositions as to which the jury might give different responses." *Edge v. North State Feldspar Corp.*, 212 N.C. 246, 247, 193 S.E. 2 (1937). In *Edge,* the issue as framed was whether a certain provision was omitted from the deed involved in the lawsuit, "by mutual mistake or by the fraud of the grantee?" The jury answered "Yes." *Id.* The Court held the verdict was uncertain or ambiguous; that it was in the alternative; and that its inconclusiveness necessitated a new trial. *Id.* at 248, 193 S.E. at 3. We agree with plaintiffs that the phrasing of the third issue in the present case included two different propositions to which the jury might give different responses.

Likewise, the fourth issue was also submitted to the jury as an alternative question:

4. Did the plaintiffs continue to collect the full amount of rent from the defendant when there were material defects in heating and plumbing facilities or such other material defects that rendered the house unsafe or unfit and/or did the plaintiffs misrepresent that the house would be repaired?

ANSWER: Yes

The trial court underscored the alternative nature of this question by instructing, "I want you to understand there are two parts to that issue . . . [it] is an and/or question. So, you may find an answer on both parts of that question or one."

Our Supreme Court, when faced with a similar issue which included the term "and/or," ordered a new trial and stated: "[T]he . . . issue submitted to the jury . . . is, in the use of the term 'and/or,' ambiguous and uncertain, and, hence, the verdict thereon is insufficient to support the judgment rendered." *Gibson v. Central Manufacturers' Mutual Insurance Co.*, 232 N.C. 712, 715, 62 S.E.2d 320, 322 (1950). The Court further stated:

> A judgment, in its ordinary acception, is the conclusion of the law upon facts admitted or in some way established, and, without the essential fact, the Court is not in a position to make final decision on the rights of the parties. A judgment must be definite. And while a verdict is not a judgment, it is the basis on which a judgment may or may not be entered. Hence a verdict should be certain and import a definite meaning free from ambiguity. . . . [T]he courts generally hold that the term "and/or" has no place in judicial proceedings,— pleadings, verdict, or judgment. (citations omitted).

*Id.* at 716-717, 62 S.E.2d at 322-323.

In the present case, the phrasing of this issue prevented the jury from establishing either of the alternative propositions with certainty or definiteness. Since the phrasing of the third and fourth issues rendered the verdict uncertain, this constitutes reversible error necessitating a new trial.

[2] Defendant contends plaintiffs waived their right to assign error to the issues previously discussed since plaintiffs failed to object to these issues before the jury retired. However, formally objecting to jury instructions is not the sole method of preserving error. Since plaintiffs timely submitted proposed jury instructions to the trial judge, it was not necessary for them to repeat their objections to the jury instructions. *See State v. Smith*, 311 N.C. 287, 316 S.E.2d 73 (1984).

## II.

[3] Plaintiffs assign error to the trial court's denial of their motion for a directed verdict on defendant's counterclaim for unfair or deceptive trade practices. This contention is without merit. Chapter 75 was created to "provide means of maintaining ethical standards of dealings between persons engaged in business and the consuming public and to promote good faith and fair dealings between buyers and sellers." *Allen v. Simmons*, 99 N.C.App. 636, 643, 394 S.E.2d

478, 483 (1990). Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has on the marketplace. Under facts similar to those presented here, this Court has held that where a tenant's evidence establishes the residential rental premises were unfit for human habitation and the landlord was aware of needed repairs but failed to honor his promises to correct the deficiencies and continued to demand rent, then such evidence would support a factual finding by the jury that the landlord committed an unfair or deceptive trade practice. *Id.* at 644-645, 394 S.E.2d 483-484.

Upon properly submitted issues the jury is to determine the facts and the trial court is to determine, as a matter of law, whether the landlord engaged in unfair or deceptive trade practices. *Process Components, Inc. v. Baltimore Aircoil Co.*, 89 N.C.App. 649, 366 S.E.2d 907 (1988); *Morris v. Bailey*, 86 N.C.App. 378, 358 S.E.2d 120 (1987).

### III.

[4] Next plaintiffs contend the trial court improperly instructed the jury on the measure of damages under the Residential Rental Agreements Act, G.S. 42-38, *et seq.* We agree the measure of damages in an action for rent abatement is well settled and is to be calculated as follows:

> [A] tenant may recover damages in the form of a rent abatement calculated as the difference between the fair rental value of the premises if as warranted (i.e., in full compliance with G.S. 42-42(a) ) and the fair rental value of the premises in their unfit condition for any period of the tenant's occupancy during which the finder of fact determines the premises were uninhabitable, plus any special or consequential damages alleged and proved.

*Miller v. C. W. Myers Trading Post, Inc.*, 85 N.C.App. 362, 371, 355 S.E.2d 189, 194 (1987). However, damages for rent abatement are limited to the amount of rent actually paid by the tenant for the substandard housing, plus any additional special or consequential damages alleged and proved. *Surratt v. Newton*, 99 N.C.App. 396, 393 S.E.2d 554 (1990). In the present case, the trial court failed to instruct the jury that damages for rent abatement are so limited.

## IV.

[5] We make one final observation concerning the trial court's instructions to the jury. "The problems faced by a trial judge in charging the jury are complex. One facet, ever present, is a lack of time to draw together in explicit language a set of basic materials for quick and successful use on short notice." N.C.P.I. *Motor Vehicle Vol.* .010. The pattern jury instructions are designed to assist the trial judge by using language which can be understood by the jury and at the same time conform to the technicalities of the law. The preliminary civil instructions help orient and educate the jury on such matters as credibility of witnesses and weighing the evidence. Also, it is the duty of the court, without a request, to explain the law and apply it to the evidence and to give a clear mandate as to what facts, for which there is support in the evidence, the jury would have to find in order to answer an issue either in the affirmative or in the negative. *Owens v. Harnett Transfer, Inc.*, 42 N.C.App. 532, 540, 257 S.E.2d 136, 141 (1979). Here the jury did not receive preliminary instructions or a clear mandate on each issue.

## V.

We decline to address the remaining assignments of error as those questions may not arise in the retrial of this action.

Affirmed in part; reversed in part; and remanded for a new trial on defendant's counterclaim.

Judge LEWIS concurs.

Judge WELLS concurs with a separate opinion.

Judge WELLS concurring.

Since this case is to be retried in part; I deem it appropriate to address, in more detail, the issue of unfair trade practices.

I perceive it to be the law in this jurisdiction that violations of the provisions of G.S. § 42-42 may form the basis for determining the question of violation of the provisions of G.S. § 75-1.1. The clarification I deem necessary breaks down into two aspects of the law of unfair trade practices.

It is my opinion that if a trier of fact determines that a landlord has maintained rented residential premises in a condition rendering those premises *unfit for habitation*, the trial court may then determine that the charging of rent for such premises while *unfit for habitation* would be an unfair trade practice.

The question of unfitness for habitation being one of fact, the violation of building codes would be only some evidence of such unfitness, but would not be conclusive of such unfitness. Therefore, a finding of building codes violations would not be the appropriate issue of fact to form the basis for the court's determination of unfair trade practices. Thus, the problem I perceive with issue number three is whether it contains the question of building codes violations at all. The issue should be the clean-cut, straightforward, uncluttered question of whether the premises were maintained in a condition *fit for habitation*.