EDWARDS v. HARDIN

[113 N.C. App. 613 (1994)]

KEITH MARCELLETTE EDWARDS, Plaintiff-Appellee v. PAUL HARDIN, IN HIS PERSONAL AND OFFICIAL CAPACITY AS CHANCELLOR OF THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL (UNC-CH), BEN TUCHI, IN HIS PERSONAL AND OFFICIAL CAPACITY AS VICE CHANCELLOR OF THE UNC-CH, CHARLES ANTLE, IN HIS PERSONAL AND OFFICIAL CAPACITY AS ASSOCIATE VICE CHANCELLOR OF THE UNC-CH, DAN BURLESON, IN HIS PERSONAL AND OFFICIAL CAPACITY AS DIRECTOR OF EMPLOYEE RELATIONS, ROBERT SHERMAN, IN HIS PERSONAL AND OFFICIAL CAPACITY AS DIRECTOR OF PUBLIC SAFETY AT UNC-CH, CHARLES MAUER, IN HIS PERSONAL AND OFFICIAL CAPACITY AS CHIEF OF POLICE AT THE UNC-CH, AND JOHN DEVITTO, IN HIS PERSONAL AND OFFICIAL CAPACITY AS DIRECTOR OF PUBLIC SAFETY AT THE UNC-CH, DEFENDANTS-APPELLANTS

No. 9215SC1316

(Filed 15 February 1994)

**Trial § 456 (NCI4th)— jury issues stated in the disjunctive — defendants deprived of right to unanimous and unambiguous verdict**

The trial court erred in submitting to the jury an issue as to whether each defendant had deprived plaintiff "of any of her rights under the First or Fourteenth Amendments to the United States Constitution by" committing the particular acts alleged as to each, since submitting the issues to the jury in the disjunctive deprived each defendant of his right to a unanimous and unambiguous verdict.

**Am Jur 2d, Trial §§ 732 et seq.**

Appeal by defendants from judgment entered 15 July 1992 by Judge F. Gordon Battle in Orange County Superior Court. Heard in the Court of Appeals 15 November 1993.

Plaintiff began to work for the University of North Carolina at Chapel Hill (UNC-CH) Public Safety Department in May 1974 as a Police Officer I. She remained the only black female officer employed by the UNC-CH Public Safety Department (the Department) until January 1990. Defendant Robert Sherman served as director of public safety at UNC-CH from 1980 until November 1989. Defendant Charles Mauer joined the Department in 1965, became major in charge (later known as chief), and left the Department in 1990. Defendant John DeVitto served as acting director of the Department from 13 November 1989 through 31 January 1991.

In 1979, based on a series of alleged discriminatory practices, plaintiff wrote a letter to the University's president. The President

responded by recommending that plaintiff use the campus grievance procedure, which involved a three step process. Step I grievances were heard by the immediate supervisor or department head. A grieving employee could appeal a Step I decision to Step II, where the UNC-CH Employee Relations Office would investigate and make a decision based on the grievance. A dissatisfied grieving employee thereafter could appeal that decision to Step III, where a panel of university employees would hear evidence and make a recommendation for ultimate decision by the chancellor. Finally, if the petitioner was still not satisfied, she had the right to appeal outside the University. Over the next decade, plaintiff followed the President's advice, and encouraged other officers to raise their criticisms in the same manner.

Using the internal grievance process, plaintiff alleged that several of her department superiors began a "retaliatory campaign" to label plaintiff as a troublesome employee and to isolate her from her fellow officers. Among the specific acts of retaliation alleged by plaintiff were: a 1987 department reorganization in which she and fourteen other officers had not been allowed to apply for new positions; the failure to hire other black females until 1990, thereby isolating plaintiff; the removal of plaintiff from an interview panel; a defendant's instruction to plaintiff that she pin her hair up in accordance with the Department's procedures manual while failing to require a white female officer to do the same; and the failure to promote plaintiff to a Crime Prevention Officer (CPO) position, and instead promoting a white male officer with less experience. Plaintiff contended that the retaliation against her for protesting acts of discrimination at the University continued until she filed a civil lawsuit, which has ultimately led to this appeal.

After several years of filing internal grievances with UNC-CH, plaintiff brought suit against the defendants Sherman, Mauer and DeVitto, and four other officials of the University, alleging several claims for relief, including violations of plaintiff's constitutional rights. All claims against defendants in their official capacity were dismissed, and all claims except the constitutional claim were also dismissed. The case went to trial at the 22 June 1992 civil session. At the close of plaintiff's evidence, the trial court granted defendants' motion for a directed verdict as to defendants Hardin, Tuchi, Antle and Burleson. The jury found that plaintiff was deprived of her constitutional rights and assessed compensatory and punitive

damages against the remaining defendants. These defendants appeal from the judgment entered.

*Alan McSurely for plaintiff-appellee.*

*Attorney General Michael F. Easley, by David M. Parker, Assistant Attorney General, for defendant-appellants.*

ARNOLD, Chief Judge.

Defendants offer four assignments of error on appeal. They contend that the trial court erred by submitting the issues to the jury in the disjunctive, thereby depriving each defendant of his right to a unanimous and unambiguous verdict. Over the objections of defendants, the verdict sheet submitted to the jury asked whether each defendant had deprived plaintiff "of any of her rights under the First *or* Fourteenth Amendments to the United States Constitution by" committing the particular acts alleged as to each. Defendants argue that because of the ambiguity of the manner in which the issues were phrased, defendants have been deprived of their right to a unanimous verdict. We agree.

"A verdict is a unanimous decision of the jury returned to the court and it is a substantial right of which neither party can be deprived." *Holstein v. Oil Co.*, 36 N.C. App. 258, 260, 243 S.E.2d 397, 398 (1978). "[W]hile a verdict is not a judgment, it is the basis on which a judgment may or may not be entered. Hence a verdict should be certain and import a definite meaning free from ambiguity." *Gibson v. Insurance Co.*, 232 N.C. 712, 716, 62 S.E.2d 320, 322 (1950) (citations omitted). "A verdict, whether upon one or many issues, should be certain and determinative of the controversy." *Edge v. Feldspar Corp.*, 212 N.C. 246, 247, 193 S.E. 2, 3 (1937).

In the recent case of *Foy v. Spinks*, 105 N.C. App. 534, 414 S.E.2d 87 (1992), this Court held as reversible error the submission of the following landlord-tenant issue phrased in the alternative:

3. Did plaintiffs fail to maintain the house rented by defendant in compliance with the Winston-Salem Housing Code or fail to make all repairs necessary to put and keep the house in fit and habitable condition?

ANSWER: Yes

*Id.* at 538, 414 S.E.2d at 88. Relying on our Supreme Court's decisions in *Edge* and *Gibson*, this Court reversed because "the phrasing of this issue prevented the jury from establishing either of the alternative propositions with certainty or definiteness," thereby necessitating a new trial. *Id.* at 539, 414 S.E.2d at 89. " 'It is misleading to embody in one issue two propositions as to which the jury might give different responses.' " *Edge*, 212 N.C. at 247, 193 S.E.2d at 2 (quoting *Emery v. R.R.*, 102 N.C. 209, 9 S.E. 139 (1889) ).

Similar to the trial courts in *Foy, Edge* and *Gibson*, the trial court in the case at bar submitted two propositions, the First Amendment and the Fourteenth Amendment Equal Protection Clause, to the jury in the alternative. The ambiguity of the manner in which the instructions were set forth and the uncertainty of the verdict rendered are indisputable. For example, in deciding whether Defendant Mauer deprived plaintiff "of any of her rights under the First or Fourteenth Amendments to the United States Constitution by . . . [o]rdering the plaintiff to pin up her hair and not requiring white female officers to do the same thing," some jurors may have determined that Defendant Mauer violated plaintiff's First Amendment right to free speech, while others determined that her Fourteenth Amendment right to equal protection was violated. Some jurors may have determined that both rights were violated. The trial court underscored the alternative nature of the issues submitted by instructing the jury,

> Ms. Edwards claims that the defendants in this case have deprived her of two of her constitutional rights: One, her right to freedom of speech under the First Amendment; and two, her right to equal protection under the Fourteenth Amendment.
>
>     . . . .
>
>     . . . [Y]ou should go down through those items listed . . . and if you find by the greater weight of the evidence that the [defendants] did the particular thing under consideration, and this was done as retaliation for protected free speech *or* that it was done in violation of the equal protection clause, . . . then you would answer the item yes.

Plaintiff contends that because the jury instructions at issue adequately informed the jury of relevant considerations and provided a basis in law for its verdict, the instruction phrased in the

EDWARDS v. HARDIN

[113 N.C. App. 613 (1994)]

alternative was not erroneous. She relies on *Griffin v. United States*, 502 U.S. ---, 116 L. Ed. 2d 371 (1991), *reh'g denied*, --- U.S. ---, 117 L. Ed. 2d 484 (1992), which raised the issue of whether a general jury verdict on a multiple-object conspiracy charge must be set aside where the evidence is insufficient to support a conviction as to one of the objects. The two objects of the conspiracy were: (1) impairing the efforts of the IRS to ascertain income taxes, and (2) impairing the efforts of the DEA to ascertain forfeitable assets. The evidence presented at trial did not connect the defendant to the DEA object, but the trial court nevertheless instructed that the jury could return a guilty verdict against the defendant if it found her to have participated in *either* one of the two objects of the conspiracy. The jury returned a general verdict of guilty against defendant. The *Griffin* Court upheld the general verdict stating that "it would generally be preferable for the court to give an instruction removing [the inadequate theory] from the jury's consideration." *Id.* at ---, 116 L. Ed. 2d at 383. The Court further stated, however, that "[t]he refusal to do so . . . does not provide an independent basis for reversing an otherwise valid conviction." *Id.* Plaintiff relied on the following language in *Griffin* for her contention that the general verdict in this case should likewise be upheld:

> It was settled law in England before the Declaration of Independence, and in this country long afterwards, that a general verdict was valid so long as it was legally supportable on one of the submitted grounds—even though that gave no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's action.

*Id.* at ---, 116 L. Ed. 2d at 376. Plaintiff asserts that because the jury's verdict was legally supportable on at least one of the submitted grounds, either First or Fourteenth Amendment, the verdict should stand.

We think *Griffin* is distinguishable. *Griffin* involved one offense—conspiracy—that was supported by two objects. The mere fact that one of those objects was submitted despite it being unsupported by the evidence did not render the general verdict reversible. Because the other object was legally sufficient to support the conspiracy charge, there is no reason to think that the jury could not analyze the evidence in the face of a factually inadequate theory and still find the defendant guilty of the remaining object.

In the case at bar, however, two possible, and two very different violations with different elements of proof were submitted to the jury, rather than only one offense. Plaintiff nevertheless contends that only one action, deprivation of her constitutional rights, arising from one source, the United States Constitution, was at issue. We disagree. Although the First and Fourteenth Amendments arise from the same source, and a remedy is provided by one source, 42 U.S.C. § 1983, for the violations of those substantive rights, the right to free speech and the right to equal protection are not so similarly related as to constitute one action, as plaintiff contends. *See Ward v. City of San Jose*, 967 F.2d 280 (9th Cir. 1991) (stating that ordinarily, where the jury found section 1983 liability without distinguishing between the Fourth and Fourteenth Amendment theories, circuit court would be required to reverse the verdict and order a new trial). Therefore, based on the ambiguity of the issues as phrased, and the uncertainty of the verdict as rendered, we remand for a new trial.

The remaining assignments of error concerning whether the trial court erred by (1) submitting issues not raised by the pleadings, (2) denying defendants' motions for directed verdict, judgment notwithstanding the verdict, and new trial, and (3) declining to give a requested instruction, may or may not arise at the retrial; therefore, we do not consider it necessary to address these issues in this opinion.

New Trial.

Judges WELLS and JOHNSON concur.