NO. COA13-1209

NORTH CAROLINA COURT OF APPEALS

Filed:  5 August 2014

EARL WAYNE FORTNER and HENRY
FORTNER, Co-Administrators
of the Estate of Johnnie H.
Fortner, Sr.,
     Plaintiffs,

v.                                          Swain County
                                            No. 11 CVS 137

JONATHAN A. HORNBUCKLE and
LYNDA HORNBUCKLE FORTNER,
     Defendants and
     Third Party Plaintiffs

v.

EARL WAYNE FORTNER and HENRY
FORTNER,
     Third Party Defendants


     Appeal by defendants from judgment entered 8 April 2013 by

Judge James U. Downs in Swain County Superior Court.  Heard in

the Court of Appeals 20 February 2014.

     *Moody & Brigham, PLLC, by Fred H. Moody, Jr., for
     plaintiffs-appellees.*

     *McGuire, Wood & Bissette, P.A., by Mary E. Euler, Joseph P.
     McGuire, and Starling B. Underwood III, for defendants-
     appellants.*


     DAVIS, Judge.

Jonathan A. Hornbuckle ("Jonathan") and Lynda Hornbuckle Fortner ("Lynda") (collectively "Defendants") appeal from the trial court's entry of judgment upon a jury verdict awarding Earl Wayne Fortner ("Earl") and Henry Fortner ("Henry") (collectively "Plaintiffs"), co-administrators of the Estate of Johnnie H. Fortner, Sr. ("the Estate"), an apportioned share of the Estate's estate tax liability. On appeal, Defendants contend that the trial court erred by (1) denying their motion for a directed verdict; and (2) failing to appropriately instruct the jury. After careful review, we vacate the judgment and remand for a new trial.

**Factual Background**

Lynda and Johnnie H. Fortner, Sr. ("Johnnie") lived together and held themselves out to the public as husband and wife — although they were not actually married — from 1976 until 1988 and then from 1998 until Johnnie's death on 23 January 2007. Johnnie died intestate and two of his sons, Earl and Henry, were appointed as co-administrators of the Estate. At the time of his death, Johnnie owned a number of parcels of real property, five of which are pertinent to the present case. Also, in 2005, Johnnie and Lynda opened a joint checking account ("the Joint Checking Account") with a right of survivorship at the State Employees' Credit Union in Bryson City, North Carolina.

In August and October of 2006, Johnnie executed three general warranty deeds to Jonathan, Lynda's son, encompassing (1) a 154-acre tract known as the "Round Hill Property"; (2) an 11.14-acre tract known as "Conley's Creek Property"; and (3) a 2.95-acre tract known as the "Macktown Property." Johnnie also executed two general warranty deeds to Lynda for a 14.74-acre tract known as the "Galbraith Creek Property" and a 9.3-acre tract known as the "Shoal Creek Property."

In October of 2006, Johnnie placed all five deeds in a manila envelope, which he handed to Lynda while the two of them were alone in his office. He then instructed her to "take [them] home, put [them] up and keep [her] mouth shut." Lynda took the deeds home and placed them in a dresser drawer in her bedroom. On 23 January 2007, Johnnie died intestate. The five deeds were recorded in the Jackson and Swain County Register of Deeds offices on 5 February 2007.

Plaintiffs subsequently filed an action in Swain County Superior Court on 7 June 2011 alleging, in pertinent part, as follows:

> 4. That during his lifetime, Johnnie H. Fortner, Sr. executed five (5) certain deeds purporting to convey real property located in Swain and Jackson Counties, North Carolina, to the Defendants without consideration.
>
> . . . .

7. That the fair market values of said tracts or parcels of land were require[d] to be included in the gross estate of Johnnie H. Fortner, Sr. for purposes of estate . . . taxes.

8. That the Plaintiffs have paid or will pay from the assets of the Estate of Johnnie H. Fortner, Sr., estate . . . taxes upon the gross taxable Estate of Johnnie H. Fortner, Sr., including taxes attributable to the parcels of real property herein described.

9. That the Plaintiffs, as personal representatives of the Estate of Johnnie H. Fortner, Sr., are entitled to recover from the Defendants an apportioned share of the estate . . . taxes paid by the Estate of Johnnie H. Fortner, Sr., which share shall be an amount which bears the same ratio to the total tax paid as the value of such tracts or parcels of land bear to the taxable estate.

10. That the Plaintiffs are also entitled to recover from the Defendants an apportioned share of any and all interest and penalty on the estate . . . taxes paid by the Estate of Johnnie H. Fortner, Sr.

11. That at the time of the death of Johnnie H. Fortner, Sr., he and the Defendant, Lynda Hornbuckle Fortner, as joint tenants with right of survivorship, owned account #3003309 at the State Employees Credit Union, Bryson City, N.C.

12. That at the time of the death of Johnnie H. Fortner, Sr., said account had a balance of $249,121.63.

13. That, to the information and belief of the Plaintiffs, all of the funds included in said account had been contributed to said account from the funds of Johnnie H. Fortner, Sr.

14. That, to the information and belief of the Plaintiffs, the assets of the Estate of Johnnie H. Fortner, Sr. are not sufficient to pay the debts of said estate.

15. That the Plaintiffs are entitled to recover of the Defendant, Lynda Hornbuckle Fortner, the sum of $249,121.63 to be used solely for the payment of debts of the Estate of Johnnie H. Fortner, Sr., which are not payable from the other assets of the Estate.

16. That, alternatively, if the Plaintiffs are not able to recover the sum of $249,121.63 from the Defendant Lynda Hornbuckle Fortner, said sum was required to be included in the gross estate of Johnnie H. Fortner, Sr. for purposes of estate . . . taxes and the Plaintiffs have paid or will pay from the assets of the Estate of Johnnie H. Fortner, Sr. estate . . . taxes upon the gross taxable estate of Johnnie H. Fortner, Sr. including taxes attributable to the bank account hereinabove referred to and are entitled to recover from the Defendant Lynda Hornbuckle Fortner an apportioned share of the estate . . . taxes paid by the Estate of Johnnie H. Fortner, Sr., which share shall be an amount which bears the same ratio to the total tax paid as the value of said account bears to the taxable estate and are entitled to recover from the Defendant, Lynda Hornbuckle Fortner an apportioned share of any and all interest and penalty on the estate . . . taxes paid by the Estate of Johnnie H. Fortner, Sr.

Defendants filed an answer, counterclaim, and third-party complaint[1] on 17 August 2011. With regard to the five deeded

---

[1] The counterclaim (brought against Earl and Henry in their capacities as co-administrators of the Estate) and the third-party complaint (brought against Earl and Henry individually) both alleged a breach of fiduciary duty resulting from their

properties, Defendants asserted that the transfers to Lynda and Jonathan constituted completed gifts and that as a result (1) the five properties were not properly includable in the Estate for purposes of calculating its tax liability; and (2) Plaintiffs were therefore not entitled to recover an apportioned share of the Estate's tax liability from Defendants attributable to those properties. Defendants also contended that the Estate should not be permitted to use any funds in the Joint Checking Account to pay the debts of the Estate.

A jury trial was held in Swain County Superior Court on 6 March 2013. The jury returned a verdict in favor of Plaintiffs, responding to the issues on the verdict sheet as follows:

> WE, THE JURY, AS OUR UNANIMOUS VERDICT, ANSWER AS FOLLOWS:
>
> 1. Are the Plaintiffs as representatives of the estate of Johnnie H. Fortner, Sr. entitled to an apportioned share of the federal and state estate taxes and interest on the asset referred to as:
>
>    Round Hill Property          Answer: _yes_
>
>       1a.  If so, what amount? _$541,275.69_
>
> 2. Conley's Creek Property      Answer: _yes_
>
>       2a.  If so, what amount? _$58,210.18_
>
> 3. Macktown Property            Answer: _yes_

---

alleged overstatement of the tax liability owed by the Estate and failure to sell real property to produce sufficient funds to pay the debts of the Estate.

3a.  If so, what amount?   $23,968.90

4. Galbraith Creek Property   Answer: yes

4a.  If so, what amount?   $128,273.12

5. Paul Cooper/                Answer: yes
   Shoal Creek Property

5a.  If so, what amount?   $129,853.48

6. What amount, if any, are the Plaintiffs as representatives of the estate of Johnnie H. Fortner, Sr. entitled to recover from the joint account with right of Survivorship at the State Employees Credit Union having an approximate balance of $248,322.00 at the time of Mr. Fortner, Sr.'s death?

ANSWER:  $248,322.00 = 100%

7. If none, what is the amount of the apportioned share of the federal and state estate taxes and interest that is attributable to the State Employees Credit Union account that the Plaintiffs, as representatives of the Estate of Johnnie H. Fortner, Sr., are entitled to recover from Lynda Hornbuckle Fortner?

ANSWER: _____.

Defendants filed a timely notice of appeal to this Court.

## Analysis

### I. Denial of Motion for Directed Verdict

Defendants initially argue that the trial court erred in denying their motion for a directed verdict based on their contention that the transfer of the five deeded properties constituted a completed gift such that the Estate was not

entitled to an apportioned share of its tax liability attributable to these properties.  We disagree.

In reviewing the denial of a motion for a directed verdict, we examine

> whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury.  In determining the sufficiency of the evidence to withstand a motion for a directed verdict, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant.  The non-movant is given the benefit of every reasonable inference which may legitimately be drawn from the evidence, resolving contradictions, conflicts, and inconsistencies in the non-movant's favor. A motion for directed verdict should be denied if more than a scintilla of evidence supports each element of the non-moving party's claim.

*Trantham v. Michael L. Martin, Inc.*, ___ N.C. App. ___, ___, 745 S.E.2d 327, 331 (2013) (internal citations, quotation marks, and brackets omitted).

The elements required to show the valid delivery of a deed in the form of a completed gift are "(1) an intention by the grantor to give the instrument legal effect according to its purport and tenor; (2) evidence of that intention by some word or act which discloses that the grantor put the instrument beyond his legal control; and (3) acquiescence by the grantees in such intention."  *Penninger v. Barrier*, 29 N.C. App. 312,

315, 224 S.E.2d 245, 247, *disc. review denied,* 290 N.C. 552, 226 S.E.2d 511 (1976) (emphasis omitted).

"A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite of a gift inter vivos. The intention may be inferred from the relation of the parties and from all the facts and circumstances." *McLean v. McLean*, 323 N.C. 543, 550, 374 S.E.2d 376, 381 (1988) (citation, quotation marks, brackets, and ellipses omitted).

Therefore, if the intent of the grantor is not to actually part with title to the property at issue but rather to retain an interest in it, there can be no completed transfer of the property. Accordingly, where evidence is introduced that calls into question the intention of the grantor, an issue of fact exists for resolution by the jury and the entry of a directed verdict on that issue is improper. *See Lerner Shops of N.C., Inc. v. Rosenthal*, 225 N.C. 316, 320, 34 S.E.2d 206, 208-09 (1945) ("There must be an intention of the grantor to pass the deed from his possession and beyond his control, and he must actually do so with the intent that it shall be taken by the grantee or by someone for him. Both the intent and act are necessary for a valid delivery. *Whether such existed is a question of fact to be found by the jury*." (citation and quotation marks omitted and emphasis added)).

We find instructive our decision in *Penninger*. In *Penninger*, the decedent, approximately three years prior to his death, executed three deeds conveying property to the defendants. *Penninger*, 29 N.C. App. at 314-15, 224 S.E.2d at 246. The decedent, without informing the defendants of the existence of these deeds, instructed his attorney to keep possession of them and to deliver the deeds to the defendants after his death. *Id*. at 314, 224 S.E.2d at 246.

The plaintiff, the decedent's next of kin and heir at law, filed an action to have the deeds declared null and void on the ground that the decedent "never at any time prior to his death released control over either of said deeds . . . and said deeds were never, in contemplation of law, delivered to the grantees or to anyone else for the use and benefit of the grantees with the intention at said time that title should pass as the instruments become effective as a conveyance." *Id*. at 313, 224 S.E.2d at 246.

The decedent's attorney — who had drafted the deeds and then kept them in his possession at the decedent's direction — testified that had the decedent ever requested that he modify the deeds, "I imagine I would have but I don't know. . . . I did whatever he instructed me to do" and that "I would have done what he wanted with these deeds to comply with his wishes." *Id*. at 314, 224 S.E.2d at 246.

This Court emphasized in *Penninger* that the dispositive factor for whether a completed transfer of a deed has occurred is the intention of the grantor at the time of the execution of the deeds. *Id.* at 315, 224 S.E.2d at 247. Applying this principle, we held that the testimony by the decedent's attorney "would certainly justify a reasonable inference that the grantor retained ultimate control over the deeds until his death. So long as a deed is within the control and subject to the authority of the grantor there is no delivery, without which there can be no deed." *Id.* (citation and quotation marks omitted).

In the present case, Lynda testified, in pertinent part, as follows:

> Q. Okay. And when did you first see those deeds?
>
> A. I'm going to have to think here just a minute because all this is running together. I got these deeds — he gave me these deeds — we were at the office and it was in October.
>
> Q. Was it October 25, the date that's on those latest deeds?
>
> A. I'm pretty sure it was.
>
> Q. And how did he give you those deeds?
>
> A. They were in a manilla [sic] folder, just stuck in it.
>
> Q. And he handed it to you?
>
> A. He handed it to me from — he was sitting

in his chair and they were to the side of him. He pulled it out that way.

Q. And he may've said something to you, and I don't want to ask you what he said, but he may've said something to you?

A. He said — yeah, he said a few words.

Q. And what did you do with the envelope and the deeds?

A. I looked at them and seen what they were and I just — we were standing up, we was getting ready to go out of the office. And I just pitched them — the file over to my desk. And when we got to the door, he asked me a question and I said, it's right there on the desk. And I was instructed to get it, take it home, put it up and keep my mouth shut.

Q. And did you do that?

A. I done that.

Q. Where did you put the manilla [sic] envelope and the deeds?

A. I put them in a dresser drawer in the bedroom.

. . . .

Q. Ms. Fortner, let me ask you this: If on October the 26th, or sometime after that, Johnny [sic] Fortner had asked you to go bring him that manilla [sic] envelope with those deeds in it, would you have done that?

    MS. EULER: Objection.

    THE COURT: Overruled.

    BY THE WITNESS: (Resuming)

A. Yeah, I would have.

We are satisfied that sufficient evidence existed to support the denial of Defendants' motion for a directed verdict. Lynda's testimony creates a reasonable inference that Johnnie lacked the intent to fully relinquish control of the deeded properties at the time he handed the deeds to her — a key element of the delivery of a deed by a donor.

This conclusion is also supported by evidence presented by Plaintiffs at trial tending to show that Johnnie did not substantially alter his control and use of the deeded properties at issue after handing the deeds to Lynda. He continued to reside on the Galbraith Creek Property and to receive rental income from the Round Hill Property, the Macktown Property, and the Shoal Creek Property — just as he had before handing the deeds to Lynda. Lynda also testified that Johnnie was considering making improvements to the Conley's Creek Property.

This evidence was sufficient to raise a question for the jury as to whether Johnnie intended to retain control over the properties at issue. "There must be an intention of the grantor to pass the deed from his possession and beyond his control, and he must actually do so, with the intent that it shall be taken by grantee or some one for him. Both the intent and the act are necessary to the valid delivery. Whether such existed is a question of fact to be found by the jury." *Huddleston v. Hardy*,

164 N.C. 210, 212-13, 80 S.E. 158, 159 (1913) (citation and quotation marks omitted).

Defendants contend that Johnnie's donative intent was established by the fact that he gave the deeds directly to Lynda, one of the donees, instead of to a third party. However, in *Huddleston*, the Supreme Court emphasized that "the controlling test of delivery is the intention of the grantor to part with the deed and put it beyond his control, and that *this intent is an issue of fact, to be passed on by a jury*." *Id*. at 213, 80 S.E. at 160 (emphasis added). Therefore while the giving of a deed from the donor directly to the donee may constitute *some* evidence of donative intent for a completed gift, it does not establish as a matter of law that a completed gift did, in fact, occur where evidence also exists tending to show that the donor did not intend to put the deed beyond his legal control.

We also reject Defendants' argument that evidence of Johnnie's subsequent actions regarding the properties is irrelevant to his intent at the time he handed the deeds to Lynda. We believe such actions could properly be used by the jury to ascertain Johnnie's intent at the time he gave Lynda the deeds. The weight to be given this evidence was for the jury to decide. Accordingly, the trial court properly denied Defendants' motion for a directed verdict.

## II. Jury Instructions

Defendants next make a series of arguments challenging the trial court's jury instructions.

> On appeal, this Court considers a jury charge contextually and in its entirety. The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed. The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by an omitted instruction. Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.

*Hammel v. USF Dugan, Inc.*, 178 N.C. App. 344, 347, 631 S.E.2d 174, 177 (2006) (citations and quotation marks omitted).

Our Supreme Court has stated that "jury instructions should be as clear as practicable[.]" *Swink v. Weintraub*, 195 N.C. App. 133, 157, 672 S.E.2d 53, 69 (2009) (citation and quotation marks omitted), *disc. review denied*, 363 N.C. 812, 693 S.E.2d 352 (2010). This is because

> [t]he chief purposes to be attained or accomplished by the court in its charge to the jury are clarification of the issues, elimination of extraneous matters, and declaration and explanation of the law arising on the evidence in the case. These are essential in cases requiring the intervention of a jury. The jury should see the issues stripped of all redundant and confusing matters, and in as clear a light

as practicable. The chief object contemplated in the charge is to explain the law of the case, to point out the essentials to be proved on the one side and on the other, and to bring into view the relation of the particular evidence adduced to the particular issue involved.

*Stern Fish Co. v. Snowden*, 233 N.C. 269, 271, 63 S.E.2d 557, 559 (1951) (internal citations and quotation marks omitted).

Defendants contend that the trial court committed reversible error in its jury instructions both as to the deeded properties and as to the Joint Checking Account. We address each of their arguments in turn.

**A. Deeded Properties**

The trial court's instructions to the jury with regard to the deeded properties consisted of the following:

> Members of the jury, there are a number of issues you'll be called upon to consider, and let's look at the first five. They're broken down in five prospective tracts of land that were deeds signed by Mr. Fortner, Sr., to Lynda Fortner for her and/or Jonathan Hornbuckle. And the principles that I give you with regard to what the plaintiff must prove by the greater weight of the evidence will apply on each of these tracts. I'm not going to go over all of them, the same five times. You'd run me off if I did that. I'm not going to run that risk. But you will consider each of these tracts separate and apart, one from the other. If you answer one or more a certain way, that does not bind you to answer the remainder of them a certain way. The contrary is true.
>
> Now, on each of these issues the burden

of proof is upon the plaintiffs, the Fortners, as administrators of the father's estate, to satisfy from the evidence and by its greater weight that you should answer that issue in their favor.

The issue essentially states as to each tract: Are the plaintiffs, as representatives of the estate of John H. Fortner, Sr., entitled to an apportioned share of the federal and state estate taxes and interest on the asset referred to as — and it goes down to each one, each one of those properties.

The plaintiff says and contends that Mr. Fortner executed those deeds and transferred the property by doing so but yet retained the interest in the land and each tract of land, each, some or all of them. And the defendants, on the other hand, say and contend — the defendants on the other hand say that he did not retain the interest but rather that they received it as a gift from him, that he did not retain control and ownership of the property.

Now, transferring real estate or any asset, more specifically here real estate, but retaining ownership of that property may consists [sic] of control, possession, living or occupying the property in question, deriving and collecting for his individual benefit any income that the property produced and any other facts and circumstances that you find from the evidence to the extent of by its greater weight that may give rise to the contention that he retained ownership of the property albeit he'd given deeds for it.

On the other hand, with regard to the defendant's contentions, that if he had transferred the property and not retained ownership of it, that he had given title to it. A gift means that Mr. Fortner intended to give up all his ownership and control of

the property immediately, not contingent. And intent is a mental attitude seldom proven by what's called direct evidence, the evidence of an eyewitness. Intent is proven by circumstances which it may be inferred. And every person regardless of what they've done is presumed to have intended the natural and probable consequences of their voluntary actions as opposed to involuntary.

And furthermore, the defendants contend that Mr. Fortner actually or he constructively transferred the property in the form of a gift. An actual delivery occurs when there is a direct transfer to another of ownership or control of something. And constructive delivery occurs when, although there is no actual delivery ownership and control of something is indirectly transferred.

Therefore, as to each of those issues on the numerical, 1, 2, 3, 4 and 5 parts of it, if you find from the evidence and by its greater weight, and the plaintiffs have satisfied you to that extent considering each of them separate and apart, one from the other, that Mr. Fortner, Sr. transferred that deed or those deeds, as the case may be, to the property yet retained ownership, control and/or possession of the property, and that he intended to do so, and did not intend to convey it as a gift either actually or constructively, then it would be your duty to answer that issue yes, in favor of the administrators of the estate and against the recipients of the property, the defendants.

On the other hand, if you fail to so find those things and the plaintiffs have not satisfied you by the greater weight of the evidence to that extent, then — or you cannot say what the truth is, then you would answer that issue against the party who has the burden of proof or otherwise answering it no, then it'd be in favor of the

recipients of the property and against the administrators of the estate.

To the extent that you answer any of them no, then you don't consider the subparts of 1(a), 2(a), 3(a), 4(a) or 5(a). But if you've answered those issues yes, that the estate is entitled to some apportioned share of the federal and state taxes for those — and interest on those properties, then it will be your duty to determine what that amount of taxes — what is the amount of those taxes. And the burden is again upon the representatives of the estate to satisfy you that, first of all, taxes are due and, second, in what amount.

And I think as the lawyers have explained to you in their final arguments if you decide that no, the estate is not entitled to any apportioned estate taxes, that they were gifts, then the estate bears the burden of paying for the gift tax. If you find that there is some apportioned share due, then it would be the responsibility of the recipients of the property to contribute whatever amount you insert on that blank space. And you have the various testimonies to consider pro or con on these issues. It's for you to say what credibility to give them and what weight to give them if you deem them to be believable by the greater weight of the evidence.

So the Court charges as to any of the first — of the five issues, primary issues, and to the extent that the representatives of the estate have satisfied you that taxes are due, estate taxes are due, and the amount of those taxes, then you will insert that amount in a dollars and cents response, not yes or no, but a dollar and cents response as to issue 1(a), 2(a), 3(a), 4(a) or 5(a), one, some, or all of them as the case may be. On the other hand — and it'll

be in some substantial amount in accordance with what the plaintiffs contend the taxes are.

On the other hand, if you're not so satisfied or you cannot say what the truth is, even on that issue, then you may answer at some substantially lesser amount in accordance with what the defendant's [sic] contend.

We are concerned by the lack of clarity in these instructions. Much of the confusion arose from the trial court's simultaneous and condensed discussion of the doctrines of completed gifts (requested by Defendants) and retained interests (requested by Plaintiffs) — two related yet distinct legal doctrines. *See Edwards v. Hardin*, 113 N.C. App. 613, 616, 439 S.E.2d 808, 810 (1994) ("It is misleading to embody in one issue two propositions as to which the jury might give different responses." (citation and quotation marks omitted)), *disc. review improvidently allowed*, 339 N.C. 607, 453 S.E.2d 166 (1995).

As discussed above, in order to show a completed gift through the delivery of a deed, a party must show "(1) an intention by the grantor to give the instrument legal effect according to its purport and tenor; (2) evidence of that intention by some word or act which discloses that the grantor put the instrument beyond his legal control; and (3)

acquiescence by the grantees in such intention." *Penninger*, 29 N.C. App. at 315, 224 S.E.2d at 247 (emphasis omitted).

With regard to the doctrine of retained interests, both parties agree that the most relevant provision of law applying this principle in the context of apportionment of federal estate taxes is 26 C.F.R. § 20.2036-1(a)(3)(i), a tax code regulation promulgated under the authority of 26 U.S.C. § 2036. The test for determining whether an interest in property was retained by the donor is whether before his death the decedent retained or reserved "[t]he use, possession, right to income, or other enjoyment of the transferred property." 26 C.F.R. § 20.2036-1(a)(3)(i) (2013). If so, the property in question is properly includable in the decedent's gross estate for the purpose of calculating federal estate tax liability. *Id.*

The United States Tax Court has held that

> [a]s used in section 2036(a)(1), the term "enjoyment" has been described as synonymous with substantial present economic benefit. Regulations additionally provide that use, possession, right to income, or other enjoyment of transferred property is considered as having been retained or reserved to the extent that the use, possession, right to the income, or other enjoyment is to be applied toward the discharge of a legal obligation of the decedent, or otherwise for his pecuniary benefit. Moreover, possession or enjoyment of transferred property is retained for purposes of section 2036(a)(1) where there is an express or implied understanding to that effect among the parties at the time of

> the transfer, even if the retained interest is not legally enforceable. The existence or nonexistence of such an understanding is determined from all of the facts and circumstances surrounding both the transfer itself and the subsequent use of the property.

*Estate of Strangi v. Comm'r*, 85 T.C.M. (CCH) 1331, 1336 (2003) (internal citations and quotation marks omitted), *aff'd*, 417 F.3d 468 (5th Cir. 2005).

Therefore, while the doctrines of completed gifts and retained interests are not unrelated, they each have distinct elements and required separate consideration by the jury. We believe that the trial court's instructions failed to properly explain these principles to the jurors in a manner sufficient to allow them to understand these concepts and properly apply them to the facts of this case.

The confusion engendered by the jury instructions was then compounded by the manner in which the issues were listed on the verdict sheet. This Court has held with regard to verdict sheets that

> [t]he form and the number of issues submitted to the jury is within the trial court's discretion. However, the issues should be formulated so as to present separately the determinative issues of fact arising on the pleadings and evidence. It is misleading to embody in one issue two propositions as to which the jury might give different responses.

*Godfrey v. Res-Care, Inc.*, 165 N.C. App. 68, 80, 598 S.E.2d 396, 404-05 (internal citations and quotation marks omitted), *disc. review denied*, 359 N.C. 67, 604 S.E.2d 310 (2004).

The legal issues raised by the facts and claims for relief in this case required the jury to decide a number of sub-issues before making the ultimate determination of what amounts, if any, Plaintiffs were entitled to recover as an apportioned share of the tax liability attributable to each of the five deeded properties. However, instead of setting out these sub-issues, the verdict sheet instead simply asked the jury to decide — as to each of the five properties — the ultimate issue of whether Plaintiffs were entitled to an apportioned share of the estate tax liability as to that property and, if so, in what amount. As a result, the likelihood of jury confusion was unacceptably high. Furthermore, we have no way of knowing the precise basis upon which the jury reached its verdict as to the deeded properties.

In sum, we conclude that Defendants have sufficiently demonstrated that the trial court's jury instructions and verdict sheet were "likely, in light of the entire charge, to mislead the jury." *See Hammel*, 178 N.C. App. at 347, 631 S.E.2d at 177 (citation and quotation marks omitted). Accordingly, we must remand this action for a new trial. *See Edwards*, 113 N.C. App. at 616, 439 S.E.2d at 810 (remanding for new trial where

"[t]he ambiguity of the manner in which the instructions were set forth and the uncertainty of the verdict rendered [were] indisputable").

**B. Joint Checking Account**

Defendants' final argument is that the trial court erred in failing to submit to the jury the issue of whether funds contained in the Joint Checking Account were necessary to satisfy the claims against the Estate. We agree that the trial court's instructions on this issue likewise constituted reversible error, thereby necessitating a new trial.

N.C. Gen. Stat. § 28A-15-10 provides that administrators of an estate can only access funds in a joint deposit account with a right of survivorship in order to satisfy the claims against an estate once all other assets of the estate have been exhausted.

> *When needed to satisfy claims against a decedent's estate*, assets may be acquired by a personal representative or collector from the following sources:
>
> . . . .
>
> (3) Joint deposit accounts with right of survivorship created by decedent pursuant to the provisions of G.S. 41-2.1 or otherwise . . . .
>
> . . . .
>
> Such assets shall be acquired solely for the purpose of satisfying such claims, however, and shall not be available for distribution

to heirs or devisees.

N.C. Gen. Stat. § 28A-15-10(a) (2013) (emphasis added).

Defendants argue that had the jury properly been instructed that the Joint Checking Account could only be accessed as a source of funds by the Estate as a last resort, it could have reasonably concluded either that none of these funds, or that merely some limited portion of these funds, were actually needed to satisfy the claims against the Estate. Defendants further assert that evidence was presented at trial establishing that other assets did, in fact, exist in the Estate that could have been used to satisfy its tax obligations without resort to the funds in the Joint Checking Account.

The question of whether the Estate was entitled to recover funds from the Joint Checking Account was listed as Issue No. 6 on the verdict sheet and the trial court's instructions pertaining to that issue stated as follows:

> Regardless of how you answer the issues 1 through 5 and subparts, you will go and consider issue number 6 which states: What amount, if any, are the plaintiffs, as representatives of the estate of Mr. Fortner, Sr., entitled to recover from the joint account [with] the right of survivorship of the State Employees' Credit Union having an approximate value or balance of $248,322 at the time of Mr. Fortner, Sr.'s death. The burden of proof, again, is upon the representatives of the estate to satisfy you from the evidence by its greater weight that the estate is the owner or has the right to claim some portion of that

account, and in turn, pay taxes on it.

But the defendants, on the other hand, say and contend that the total of it or a great portion of it was a gift or it had already been established and owned by the defendant, Lynda Hornbuckle Fortner. Therefore, the Court charges if you find from the evidence by its greater weight that the plaintiffs have satisfied you to that extent that some portion or all of that joint account with right of survivorship was retained by Mr. Fortner's estate at the time of his death, then it would be for you to say what that amount is in the answer provided.

At the top it says, what amount, if any. The plaintiffs say and contend it's a substantial amount, if not all of it. The defendants say and contend it's a substantially lessor [sic] amount, if any of it. But if you fail to so find or have a — cannot say what the truth is as to what that issue is, then you'll answer in some substantially lessor [sic] amount in accordance with what the defendants suggest, even to the sum of none.

Now, if you answered in any amount then that ends the lawsuit, or at least that ends the issues. Only if you say that there was none in that account that was attributable to Mr. Fortner's estate, then you'll go and consider issue number 7 . . . .[2]

---

[2] The trial court then proceeded to separately instruct the jury on the issue denominated on the verdict sheet as Issue No. 7, which asked the jury to decide — assuming it determined that Plaintiffs were not entitled to any of the funds in the Joint Checking Account under Issue No. 6 — the following issue: "If none, what is the amount of the apportioned share of the federal and state estate taxes and interest that is attributable to the State Employees' Credit Union account that the Plaintiffs, as representatives of the Estate of Johnnie H. Fortner, Sr., are entitled to recover from Lynda Hornbuckle Fortner?" The manner in which Issue No. 6 and Issue No. 7 were presented to the jury

It is clear from the above-quoted portion of the jury instructions that the trial court failed to direct the jury to determine whether the funds contained in the Joint Checking Account were actually needed to satisfy claims against the Estate. Plaintiffs concede that the trial court erred in failing to so instruct the jury but argue that the error was cured by the trial court's insertion of language in the third paragraph of the judgment stating that with regard to the sum of $248,322.00 awarded by the jury to Plaintiffs in its verdict as to Issue No. 6, "said sum shall be used solely for the purpose of satisfying claims against the Estate of Johnnie H. Fortner, Sr. which exceed all of the other assets of the Estate of Johnnie H. Fortner, Sr. . . ."

We are unpersuaded by Plaintiff's argument. The question of whether the Estate needed all, or some portion of, the funds in the Joint Checking Account in order to satisfy claims against the Estate was a factual issue for the jury. In the absence of an instruction on this point, the jury would have felt no need to first determine whether the remaining assets of the Estate were sufficient to satisfy all claims against the Estate — as

as separate and distinct issues, each asking the jury to determine whether or not Plaintiffs were entitled to recover funds from the Joint Checking Account, also likely served to confuse the jury.

required by N.C. Gen. Stat. § 28A-15-10 — before deciding whether Plaintiffs were entitled to recover any or all of the funds contained in the Joint Checking Account. Accordingly, we conclude that the trial court's failure to instruct the jury on this issue constituted prejudicial error and likewise requires a new trial.

## Conclusion

For the reasons stated above, we hold that the trial court did not err in denying Defendants' motion for a directed verdict. However, we conclude that the trial court committed prejudicial error in its instructions to the jury. Therefore, we remand this matter for a new trial.

NEW TRIAL.

Judges CALABRIA and STROUD concur.